## THE STATE v. FRANKS ET AL.

1. **Indictment:** BURGLARY: DUPLICITY: SIMILAR STATUTES DISTINGUISHED. An indictment for burglary under § 3891 of the Code would differ but little from an indictment under § 3894, without the use of some of the qualifying words used in the latter section; but the indictment in this case is made certain as to the crime charged by describing the house burglarized as one "in which goods were kept for use, sale and deposit,"— words peculiar to § 3894.

2. ———: ———: ALLEGATION OF OWNERSHIP: WHAT IS SUFFICIENT. An indictment for breaking and entering a dwelling house, under § 3894 of the Code, was not fatally defective because, instead of alleging

that the house was the dwelling of those who dwelt therein, it alleged that the house belonged to the estate of one R., and that his surviving widow and children, being his heirs at law, kept goods and valuable things therein, and that the intent of the defendants was to steal and carry away said goods and valuable things. If there was inaccuracy in this, the defendant was not prejudiced thereby. See § 4302 of the Code, and *State v. Carr*, 43 Iowa, 418.

3. **Burglary:** EVIDENCE: POSSESSION OF BURGLAR'S TOOLS. Where defendants were arrested only a few hours after the commission of the burglary with which they were charged, it was competent to prove that burglar's tools were found upon one of them when arrested.

4. ———: EXCESSIVE PUNISHMENT: WHAT IS NOT. Ten years in the penitentiary is not excessive punishment for men who, in the night time, invade the house of a peaceful citizen and, at the point of a revolver, require him to remain in bed while they plunder and pillage his house.

*Appeal from Washington District Court.*

SATURDAY, JUNE 7.

THE defendants were tried and convicted of the crime of breaking and entering a dwelling house in the night time, in which goods, merchandise and valuable things were kept for use, sale and deposit, with the intent to steal and carry away property therein kept. There was a trial, which resulted in the conviction of all of the defendants, and they appeal.

*E. W. Stone,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

ROTHROCK, CH. J.—I. The indictment upon which the trial was had is as follows: "The grand jury of the county of Washington, in the name and by the authority of the state of Iowa, accuse William Franks, James Hall and Frank Fitzgerald of the crime of burglary, committed as follows: The said William Franks, James Hall and Frank Fitzgerald on the first day of November, in the year of our Lord one thousand, eight hundred and eighty-three, in the county and state aforesaid, at about the hour of two o'clock in the morning, and in the

*1. INDICTMENT: burglary: duplicity: similar statutes distinguished.*

night time of said day, with force and arms, did unlawfully, feloniously and burglariously break and enter a certain dwelling house belonging to and the property of the estate of W. F. Rodman, deceased,—said dwelling house being a building in which goods, merchandise and valuable things were kept for use, sale and deposit by the surviving widow and children —heirs-at-law—of said W. F. Rodman, deceased, with the felonious intent by the said William Franks, James Hall and Frank Fitzgerald then and there feloniously to take, steal and carry away the property of the said widow and children, heirs-at-law of said W. F. Rodman, deceased, and then and there to commit a public offense, to-wit, larceny, contrary to and in violation of law.

"J. A. DONNELL,

"Dist. Atty. 6th Judicial District of Iowa."

In a motion for a new trial and in arrest of judgment, the defendants claimed that the indictment was bad for duplicity; and that objection is now urged upon our attention. It is insisted that two crimes are charged in the indictment,—one being the crime of burglary, as defined in section 3891 of the Code, and the other the crime of breaking and entering, as defined in section 3894 of the Code. These two sections of the statute, so far as they provide a punishment for breaking and entering dwelling houses in the night time with intent to commit a public offense, are quite similar, and, without the use of some of the qualifying words in section 3894, an indictment under that section would be but little, if any, different in language from an indictment under section 3891. But in this case the pleader unmistakably designates the crime as that provided for in section 3894, by describing the house as a place "in which goods were kept for use, sale and deposit." This language is peculiar to section 3894, and the words unmistakably indicate that the indictment is under that section, and, in order to hold it to be an indictment under the other section, it is necessary to reject these words as surplusage.

We think it very plain that this objection to the indictment is not well taken.

II. It is further claimed that the indictment is insufficient, because it fails to charge whose dwelling house was broken 2. ——: ——: and entered. It will be observed that it is allegation of charged in the indictment that the house was the ownership: what is suffi- cient. property of the estate of W. F. Rodman, deceased, and that his surviving widow and children, being his heirs- at-law, kept goods and valuable things therein, and that the intent of the defendants was to steal and carry away said goods and valuable things. It is urged that the indictment should have charged the dwelling house to be the property of the persons who dwelt therein, and that to charge it as the property of the estate of a deceased person is not a charge that it was the property of any person. It probably would have been more precise if the pleader had charged that the dwelling house was the house or dwelling of those who act- ually resided therein, instead of charging that it was the property of an estate. But we think the defendants were not prejudiced by the form of the indictment. This allegation in an indictment is for the purpose of identifying the crime, and it appears to us that the identification is complete. "When an offense involves the commission of, or an attempt to com- mit, an injury to the person or property, and is described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the name of the person injured or attempted to be injured is not material." Code, § 4302. "A mistake in the name of the person injured, in an indict- ment for robbery, is not material, unless it be shown that the party accused has suffered prejudice by reason of the mis- take." *State v. Carr* 43 Iowa, 418.

III. The defendants were arrested within a few hours after the crime was committed. They were together when 3. BURGLARY: arrested, and upon one of them certain burglar's evidence: possession of tools were found. The state was permitted, over burglar's tools. the defendants' objection, to show that the bur-

glar's tools were found in possession of one of the defendants. It is claimed that this ruling was erroneous. It is unquestionably correct that the evidence of a distinct substantive offense is not admissible to establish defendants' guilt of the offense laid in the indictment. *State v. Walters*, 45 Iowa, 389. But the evidence now under consideration is not of this character. It tended to convict the defendants of the crime charged, and to identify them as the parties who committed the crime. It was just as competent evidence, though probably not as conclusive, as the possession of the stolen property. The possession of the burglar's tools was also competent as showing the intent of defendants in entering the house. If a person is found to have entered a dwelling house in the night time, he might or might not be guilty of a felony. If it be shown that he had burglar's tools in his possession at the time, such fact would go far to show the intent of the party charged.

IV. There are many other objections to the record in this case presented in argument by counsel for defendants. We need not take notice of them in detail. None of

4. ———: excessive punishment: what is not.

them are well taken. Two of the defendants were sentenced to the penitentiary for ten years, and the other for eight years. It is claimed that the punishment is excessive. We think otherwise. Ten years in the penitentiary is not too severe punishment for men who, in the night time, invade the house of a peaceful citizen and, at the point of a revolver, require him to remain in his bed while they plunder and pillage his house. These defendants were found guilty of that crime, and we think the verdict is fully sustained by the evidence.

AFFIRMED.