WILLIAM CRAIG ET AL. V. STATE OF NEBRASKA.

FILED MARCH 7, 1907.   No. 14,731.

1. **Criminal Law: EVIDENCE: REVIEW.** Where evidence. is conflicting
   the jury are the judges of its weight, and their verdict will
   not be molested, in such a case, unless it appears to be clearly
   wrong.

2. ———: EVIDENCE OF CHARACTER. In a criminal prosecution, the
   state ordinarily will not be permitted to introduce evidence of
   the character of the accused, unless he has put his character in
   issue; but, where counsel for the defendant, by his cross-exam-
   ination, has made it necessary for a prosecuting witness to give
   such evidence by way of explanation of his own conduct at the
   time the offense was alleged to have been committed, he may,
   under proper restriction, give such evidence on his redirect
   examination.

3. ———: INSTRUCTIONS. Where two persons charged with homicide,
   one as principal, and the other as accessory before the fact,
   admit the killing, but rely on necessary self-defense. on the part
   of the principal as an excuse therefor, a statement in an in-
   struction, otherwise correct, "that defendants set up necessary
   self-defense," does not amount to prejudicial error, if the issues
   as to both defendants are otherwise fully and correctly stated.

ERROR to the district court for Cherry county: WILLIAM
H. WESTOVER, JUDGE.   *Affirmed.*

*F. M. Wolcott, A. M. Morrissey* and *Hamer & Hamer,*
for plaintiffs. in error.

*W. T. Thompson, Attorney General, W. B. Rose* and
*Grant G. Martin, contra.*

BARNES, J.

William Craig and William Rash, hereafter called the
defendants, were convicted in the district court for
Cherry county of murder in the second degree for the
killing of one Elijah Custard. Craig was sentenced to
life imprisonment, Rash was sentenced to serve ten years
in the state penitentiary, and they have brought the case

here by separate petitions in error. The information on which they were tried charged Craig with the murder as principal, and Rash as accessory before the fact. Their petitions contain a great many assignments of error, but three of which appear to be relied on for a reversal of the judgment of the trial court.

1. It is contended that the evidence was insufficient to sustain the verdict, and to the determination of that question we will first address ourselves. It appears from the record that nine persons (including the defendants) witnessed the killing, which is not denied, and of these persons five, who were wholly disinterested, were called as witnesses, and testified for the state. They agreed practically in their statements, which were, in substance, that Craig was the keeper of a vile resort, known as the "Hog Ranch," near Valentine in said county, and that Rash was one of his bartenders at the time the murder was committed; that on the 17th day of September, 1905, the deceased, with others, were at the resort above mentioned, and Craig ordered the girls to come out into the dance hall, which was a room about 40 feet long by 30 feet wide, with a bar extending nearly across its east end; that Craig and the deceased had some words at or near the west end of the dance hall, and Craig called the deceased a vile name, and told him that he did not care anything for him, after which remark Craig started toward the bar, with Custard and one or two others following him. When he came near the east end of the hall Craig started on a run, went behind the bar and seized a revolver, called the "big white gun." By that time Custard had reached a point at the south end of the bar where Rash was sitting at a table. Rash arose, seized Custard around the waist with one arm, and drew a revolver, called the "blue steel gun," with his other hand. While they were struggling with each other, Craig reached over Rash and struck Custard a severe blow on the head with the "big white revolver." This partly stunned the deceased, and thereupon the witness Hunter grabbed hold

of the big gun by the barrel and attempted to wrest it from Craig, when Craig told Rash to shoot the s—— of a b————. Rash did not shoot, but handed the "blue steel gun" to Craig, who immediately shot the deceased in the forehead, killing him almost instantly. That during the altercation leading up to the shooting Custard did not lay hands upon Craig, and did not strike him or attempt to strike him or molest him in any manner whatever. That the deceased was unarmed, and had made no demonstrations indicating that he intended to assault or injure any one.

Opposed to this evidence was the testimony of William Pettitt, who corroborated the witnesses for the state in many particulars, but stated that Custard followed Craig, forced his way in behind the bar, and struck or was striking at him at the time Craig hit him with the "big white revolver"; that Rash was standing behind the bar with his arms on the counter, and took no part whatever in the affray. His testimony, however, was somewhat discredited by the evidence of other persons, to whom he had made a different statement of the transaction before he gave his testimony in court. One Winston, who was in the employ of the defendant Craig, as barkeeper, also testified for the defendants, and corroborated the evidence of Pettitt to some extent, although he did not claim to have been present when the affray first commenced. The defendant Craig testified, in substance, that the deceased followed him across the room and in behind the bar; that he assaulted him, struck him, and was striking at him when he struck the deceased with the "big white gun"; that the witness Hunter and the deceased wrested the "big white revolver" from him, and in order to protect his own life he reached under the counter, got the revolver called the "blue steel gun," and shot the deceased with it; that Rash took no part in the transaction whatever. Rash's evidence was practically the same as that of the defendant Craig.

With the evidence in this condition, it was for the jury

to say which of the witnesses they believed to be most worthy of credit. They resolved that question in favor of the state, and it seems clear that they were fully justified in doing so. It is urged, however, that the testimony is insufficient in any event to sustain the verdict of murder in the second degree as against Rash. If the testimony given by the witnesses on behalf of the state is true, and it was the province of the jury to say whether it is true or not, it is sufficient to sustain the conviction. It was testified that Rash was the first of the defendants who was guilty of any overt act amounting to an assault against the deceased. Prior to his participation in the trouble it had been simply a conflict of words. It was he who grabbed the deceased from behind, pinioned his arms to his body with one arm, while he held his revolver in the other hand. It was shown on behalf of the state that he responded to the call of his codefendant Craig to "shoot the s—— of a b————" by handing the "blue steel revolver" to him, from which the fatal shot was fired. So it seems clear that the jury were warranted in finding that he was an active participant in taking the life of the deceased.

2. It is next contended that the court erred in receiving the testimony of the witness Hunter on the question of the character of the defendant Craig. It is said in the defendants' brief that the state was permitted to show, over the objections of the defendants, that the defendant Craig on other occasions had made "gun plays"; that he had struck one fellow shortly before this, and that the men, with one or two exceptions, that run that sort of a place were in the habit of making "gun plays." It is claimed that this was prejudicial error, because the defendant had not elected to put his character in issue, and, therefore the state was not entitled to introduce evidence of that kind. If the state had offered this evidence in chief it is probable that its reception would have been prejudicial error. But an examination of the record discloses that this evidence was brought out on the redirect

examination of the witness, and was justified by the line of cross-examination adopted by the defendants' counsel. It therefore presents no ground for complaint on his part. Again, it appears from the record that the court, in effect, instructed the jury to disregard any such evidence, for in paragraph 19 of his instructions the jury were told, in substance, that the occupation or business of the defendants, or either of them, at the time of the killing, in no way tended to prove their guilt or innocence; that in arriving at their verdict they should disregard the matter of the occupation or business of the defendants. In other words, the jury were told not to permit themselves to be in any way prejudiced against the defendants by reason of their occupation or business. So it seems clear that reversible error cannot be predicated on this assignment.

3. The remaining assignment of error is that the court erred in giving paragraph No. 16 of the instructions. The alleged fault of this paragraph is that the court told the jury that the "defendants" set up the plea of necessary self-defense. It is claimed that this is a misstatement of the defense interposed by defendant Rash, since he absolutely denied having any connection with the killing. While it was not the contention of the state that Rash fired the fatal shot, but that his complicity in the murder was that of an aider and abbetter therein, yet, if his codefendant Craig was justified in killing the deceased on the ground of necessary self-defense, such justification would inure to the benefit of Rash and constitute in his behalf a perfect defense. So the statement complained of could not have been prejudicial to his interests. We find, however, that by certain other paragraphs of the instructions the jury were told that it was necessary that they should find from the evidence, beyond a reasonable doubt, that the defendant Rash unlawfully, feloniously, wilfully and purposely aided, abetted, comforted, procured, assisted and maintained Craig in the killing of the deceased, before they could find him guilty of any of the degrees of homicide with which his codefendant stood charged.

They were also correctly informed that, unless they found Craig guilty of some one of the degrees of homicide, as charged in the information, they could not find Rash guilty of any offense. By the latter part of instruction No. 16 the jury were informed that, if from the evidence they believed that at the time the defendant Craig was alleged to have shot Elijah Custard the circumstances surrounding the defendant were such as in sound reason would justify or produce in his mind an honest belief that he was in danger of receiving from the said deceased great bodily harm, and that the defendant Craig in doing what he then did was acting from an instinct of self-preservation, then he would not be guilty, although he was in fact in no real or actual danger. So, taking the instructions as a whole, it seems improbable that the jury were, or could have been, misled by the instruction complained of. It is insisted, however, that Rash was entitled to have the theory of his defense stated to the jury. We find that no separate request for any such instruction was tendered to the trial court, and, indeed, when we consider the charge as a whole, it appears that such an instruction was unnecessary. Again, in several paragraphs of the charge Rash's theory of the case was outlined and stated as follows: "If you find and believe from the evidence, beyond a reasonable doubt, that, at the time and place where the defendant William Craig shot and killed said Elijah Custard, the defendant William Rash was then and there present, and said defendant William Rash then and there unlawfully, feloniously, wilfully and purposely was aiding, comforting, abetting, assisting and maintaining the said William Craig in killing the said Elijah Custard, then you are instructed, as a matter of law, that the defendant William Rash would be equally guilty to the same extent and of the same crime as the defendant William Craig." The jury were also told that, unless the evidence established the above fact beyond a reasonable doubt, the defendant Rash would not be guilty of any

offense whatever. So we are of opinion that the giving of the instruction complained of was not reversible error.

In conclusion, it appears that the defendants were accorded a fair trial: that upon conflicting evidence the jury passed upon the facts, and in so doing have found and said that they were satisfied beyond a reasonable doubt of the guilt of both of the defendants, and we know of no rule which would authorize us to set aside their verdict.

For the foregoing reasons, the judgment of the district court is in all things

AFFIRMED.