THE STATE v. EMMONS.

*Appeal from Mahaska District Court.*

EMMONS v. WOODRUFF, SHERIFF.

*Original Proceeding on Habeas Corpus.*

MANLEY v. MORGAN, SHERIFF.

*Appeal from order of* JOHN W. HARVEY, *Judge of the District Court of the Third Judicial District.*

1. **Burglary**: INDICTMENT: CONTENTS AND OCCUPANCY OF HOUSE. In an indictment for burglary, it is not necessary to allege that goods, wares and merchandise were kept in the house, nor to set out the names of the dwellers in the house; (Compare *State v. Franks*, 64 Iowa, 39, and *State v. Rivers*, 68 Id., 611;) and the indictment in this case (see opinion) for breaking into a dwelling house owned by a corporation, with intent to steal the property, then and there being, of a person named, *held* good on demurrer.

2. **District Court**: NUMBER OF DISTRICTS AND JUDGES: SEVERAL JUDGES SITTING AT ONCE IN SAME COUNTY: CONSTITUTIONALITY. Under the second amendment to the constitution of Iowa, adopted in

1884, and chapter 134, Laws of 1886, it is lawful for the district court to consist of more than one judge, and for several judges of a district to hold court at the same time in the same county; and it is no objection that rulings in the same case are made by different judges.

3. ———: ———: CHAP. 134, LAWS OF 1886: CONSTITUTIONALITY. Chapter 134, Laws of 1886, providing for redistricting the state for judicial purposes, etc., is not repugnant to § 29, art. 3, of the constitution, which provides that every act shall embrace but one subject, and matters properly connected therewith; nor to § 30, art. 3, on the ground that the act is not general and of uniform operation throughout the state.

WEDNESDAY, JUNE 29.

As these causes involve substantially the same questions, they will be determined in one opinion. The first case is an appeal by the defendant from a judgment of conviction upon an indictment for burglary. The second cause is an original proceeding in *habeas corpus* in this court, in which it is claimed that the conviction for burglary is void. In the last-named case, the plaintiff, Manley, was convicted of the crime of larceny. After conviction, he sued out a writ of *habeas corpus*, upon the alleged ground that the conviction was void. A hearing was had, and an order was made that the plaintiff be remanded to the custody of the defendant, who is sheriff. From this order plaintiff appeals.

*Bolton & McCoy* and *Liston McMillen*, for Emmons.

*J. L. Brown* and *Charles Thomas*, for Manley.

*A. J. Baker, Attorney-general,* and *H. W. Gleason,* for the State.

ROTHROCK, J.— I. In the first named case the defendant demurred to the indictment. The demurrer was overruled. A motion for arrest of judgment was also made upon the same grounds, which motion was overruled. It is claimed that the rulings were erroneous. The charging part of the indictment is as follows: That " the said Charles Emmons, on the twenty-first day of

1. BURGLARY: indictment: contents and occupancy of house.

December, in the year of our Lord one thousand eight hundred and eighty-six, in the county aforesaid, did feloniously, unlawfully, willfully and burglariously break and enter a certain dwelling house of another, the property of Oskaloosa College, a corporation duly organized under the laws of Iowa, with intent to commit a public offense, to-wit, the crime of larceny, by stealing, taking and conveying away the personal property of M. J. Sumner then and there being." The indictment is under section 3891 of the Code, which provides for the punishment of breaking and entering any dwelling-house in the night-time with intent to commit any public offense. The objections to the indictment, as set forth in the demurrer thereto, are as follows: " (1) The indictment does not show that in said building any goods, merchandise or valuable things were kept for use, sale or deposit; (2) the indictment does not show that the building was a dwelling-house; (3) the indictment shows that the building was not a dwelling-house; (4) the indictment shows that it was the house of the Oskaloosa College, a corporation, and a corporation cannot inhabit a dwelling-house, it being an incorporated body; (5) the indictment does not show who was inhabiting said alleged dwelling-house; (6) the indictment does not show who was the owner of the dwelling-house. nor that the name of the owner or party injured was unknown to the grand jury; (7) the indictment does not substantially conform to the requirements of the Code."

A mere reading of most of these grounds of demurrer, in connection with the averments of the indictment, shows that the grounds of demurrer are not well taken in point of fact. It was not necessary, under the statute, that the indictment should show that goods, wares and merchandise were kept for use, sale or deposit in the building. It is claimed that the indictment is bad, because the ownership is laid in a corporation and a corporation cannot inhabit a dwelling-house. It is not necessary that the indictment should set out the names of the dwellers in the house. At common law, the ownership of the

building was required to be laid in the person in possession. (Whart. Crim. Law, §§ 787, 788, 816.) But an erroneous allegation in this respect is not material, under our criminal code, when the crime is in other respects described with sufficient certainty. (Code, § 4302.) In the case of *State v. Franks*, 64 Iowa, 39, we held that an indictment for breaking and entering a house, the property of the estate of a deceased person, was not fatally defective; and in *State v. Rivers*, 68 Iowa, 611, it was held that, where the building was described as the property of three persons who owned it as partners, proof that it was actually owned by two of them was sufficient. We think the indictment was not vulnerable to the objections urged.

II. Emmons was tried for the crime charged in the district court of Mahaska county. It appears from the record upon his appeal, and in his *habeas corpus* proceedings, that he was tried before Hon. David Ryan, one of the judges of the district court for that district, at the March term, 1887. It further appears that, at the time of the trial, Hon. J. K. Johnson, and Hon. W. R. Lewis,

2. DISTRICT court: number of districts and judges: several judges sitting at once in same county: constitutionality.

who are also district judges for said district, were each presiding as judges in the trial of causes in other rooms in the court-house in Mahaska county. The term was opened by Judge Johnson, who impaneled the grand jury which found the indictment, and who made the order overruling the demurrer to the indictment. After the term had been in progress for some time, Judge Ryan appeared; and in pursuance of an order made by said judges, Judge Ryan took up the criminal calendar, and presided as judge, and at the same time Judge Johnson presided at the trial of the civil causes. Whatever business was transacted by Judge Lewis appears to have been done without any arrangement between the judges which was made of record. It is claimed by counsel for Emmons that his conviction was void, because Judge Ryan had no power or authority to exercise the func-

tions of a judge in Mahaska county at the time of the trial. It is urged that two or more courts cannot be held at the same time in the same county, because section 5, art. 5, of the constitution, provides that "the district court shall consist of a single judge, who shall be elected by the qualified electors of the district in which he resides." To determine the question as to the validity of this proceeding, it is necessary that other provisions of the constitution be considered.

Section 10 of article 5 is as follows: "The state shall be divided into eleven judicial districts; and after the year eighteen hundred and sixty the general assembly may reorganize the judicial districts, and increase or diminish the number of districts, or the number of judges of the said court, and may increase the number of judges of the supreme court; but such increase or diminution shall not be more than one district or judge of either court at any one session; and no reorganization of the districts, or diminution of the judges, shall have the effect of removing a judge from office. Such reorganization of the districts, or any change in the boundaries thereof, or any increase or diminution of the number of judges, shall take place every four years thereafter, if necessary, and at no other time."

It is obvious from this section that the framers of the constitution anticipated that the judicial force provided for by section 5, art. 5, would, by reason of the growth of the state and increase of its population, prove insufficient to transact the business required to be done, and provision is made for increasing the number of districts, and increasing the number of judges. By reason of the limit placed upon this increase, and the rapid growth of the states, the legislature in 1868 adopted the expedient of organizing a circuit court. In 1884 the constitution was amended as follows: "At any regular session of the general assembly the state may be divided into the necessary judicial districts for district court purposes, or the said districts may be reorganized, and the number of districts, and the judges of said court, increased

or diminished." Under the power given in this amendment, the legislature, by chapter 134 of the Acts of the Twenty-first General Assembly, abolished the circuit court, and divided the state into eighteen judicial districts, and provided for the election of from one to four judges in each district.

Now, it is apparent that under section 5 of article 5 of the constitution but one judge was allowed for each district. But this provision was only operative until the year 1860. Under section 10 of the same article, the number of districts and the number of judges could be increased or diminished within the limitations therein prescribed. The amendment of 1884 removed these limitations, and the legislature was given plenary power to reorganize the districts, and increase or diminish the number of the districts, and the judges of said court; so that, instead of there being but one judge of the district court elected by the qualified voters of the district in which he resides, the legislature has the power to provide for the election of more than one of such judges in a district. This appears to us to be so plain as to require neither elaboration nor discussion.

We conclude that the judges above named were constitutionally and lawfully elected; and the legislature has the constitutional power to provide that a single county shall constitute a judicial district. This has been done in one instance, by making Polk county one district, and providing for three judges therein. In that district all three of the judges preside at the same time and in the same county; and there is nothing in the law reorganizing the districts which prohibits the same thing from being done in the other districts in the state. The law requires that the judges " shall hold their courts at such times and in such order as shall best dispose of the business thereof, and as they may arrange among themselves;     *     *     *"     and, "in case the judges of any district are unable to agree as to the manner of holding their courts, or as to the counties in which

The State v. Emmons.

they are severally to preside, they shall refer the matter to the chief justice of the supreme court, who shall assign said judges to such counties as he may determine; and the chief justice of the supreme court shall have the power to assign any district judge, when not occupied in holding court in his own district, to hold court in any other district in the state, where any judge may be incapacitated from holding court, or there may arise a necessity therefor." These provisions of the statute contemplate—indeed they require—that the judges shall hold their courts so as to dispose of the business. Now, if it be necessary that more than one judge shall hold court in any county at the same time, there can be no possible objection thereto, constitutional or otherwise. And there is nothing in the record showing that the judge before whom Emmons was tried was presiding without any arrangement to that effect with the other judges of the district, if even such an arrangment was necessary to give him jurisdiction of the defendant and his cause.

Much was urged in argument as to the inconvenience resulting from allowing more than one trial to be in progress in the same county at the same time. This we cannot consider. Questions of convenience have no place in determining the constitutional power and authority of a court.

Complaint is also made that one judge presided when the ruling was made upon the demurrer, and another when the same question was raised in the motion in arrest of judgment. But this objection does not go to the jurisdiction, and the same thing will necessarily occur in the trial of cases where the judges alternate in holding court in the several counties of the district.

III. The foregoing discussion disposes of all questions in the cases in which Charles Emmons is a party. In the case of Manley it is claimed that Hon. R. C. HENRY, THE SAME. who presided at the trial, was not a judge of the district court, because there was no authority, under the constitution, for the election of more than one judge in each judi-

cial district. It is claimed that Hon. JOHN W. HARVEY is the only constitutional judge of said district, because he received more votes at the election than any other candidate. As we hold that the legislature had the power to provide for more than one judge in a district, this objection demands no further consideration.

IV. It is claimed, in the last-named case, that chapter 134 of the Acts of the Twenty-first General Assembly is in violation of section 29 of article 3 of the con-stitution, which provides that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title; but, if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." The title of the act is as follows: "An act to abolish the circuit court, and to enlarge the powers and jurisdiction of the district court, and to provide for additional judges, and to reorganize the judical districts of the state." Counsel for Manley, the appellant, objects to that part of the law which provides for additional judges of the district court. It is difficult to perceive what form of words would make the title of the act more expressive upon that feature of the law.

V. It is further claimed that said statute is void because it is not of uniform application throughout the state, as required by section 30 of article 3 of the consti-tution. It is a sufficient answer to this objection to say that this constitutional provision, by its terms, applies only to subjects of legislation where a general law can be made applicable. It is apparent that, in districting the state by counties for judicial purposes, it would be impracticable to make the districts entirely uniform in the number of coun-ties, in population, or in the number of judges required in each district.

The judgment convicting the defendant Emmons of the crime of burglary will be affirmed. His proceeding in

*habeas corpus* will be dismissed, and he will be remanded to the sheriff to execute the judgment of conviction; and the order of the judge remanding Manley to the custody of the sheriff will be

AFFIRMED.