WILEY CHARLES, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

| 36 | 691 |
|----|-----|
| f41 | 293 |
| 36 | 691 |
| e46 | 123 |
| 46 | 226 |
| 36 | 691 |
| d51 | 40 |
| 36 | 691 |
| 53 | 338 |

1. It is not necessary in an indictment under our statute for breaking and entering a building in the nighttime with intent to commit a misdemeanor, by stealing, to allege that the property intended to be stolen was actually in the building at the time of the breaking and entry thereof.

2. An assignment of error is that the court erred in refusing to require fuller answers of a State's witness, whose name is given, to questions propounded by defendant's counsel on cross-examination. Neither the assignment nor brief states the questions upon which the ruling was made, and no page of the record is designated where the ruling complained of can be found. Under these circumstances, it is not the duty of the court to search the record to ascertain what questions and answers and rulings are intended to be presented by the assignment and brief.

3. The defense in a criminal case charging the defendant with breaking and entering a building with intent to steal a mule was that the breaking and entry were made with no criminal intent, but in good faith to take possession of the mule, be-

lieving him to be the property of the defendant. The State read in rebuttal the record of a proceeding in replevin for the mule in a justice of the peace court, begun by defendant against the person in possession of the animal. From this record it appeared that the case was dismissed for want of prosecution. The defendant, in his statement before the jury, had given a parol statement about the same proceeding. The record was objected to as being irrelevant and immaterial: *Held,* That the objection was properly overruled; that evidence tending to prove a voluntary abandonment by the defendant of his suit for possession of the mule tended to contradict his statement of good faith and honest belief that it was his property.

4. Where a question is involved in a criminal case as to the ownership of property which the defendant is charged with an intent to steal, evidence tending to show that a person alleged in the indictment to be the owner of the property, and admitted by the defendant to have formerly been the owner of the same, was induced to part with the possession by fraudulent misrepresentations, and that he would not have parted with the same except for such misrepresentations, is admissible as tending to show that the mule still remained the property of the former owner, unless the defendant were a bona fide purchaser for value, without notice of the fraud.

5. The court charged the jury as follows: "In your efforts to come to a correct verdict, you may first consider whether, from the evidence, the building or stable was the property of J. R. Livingston, was broken and entered as alleged in the indictment. If, from the evidence, you are satisfied that it was closed on the night of the 20th February, 1895, and that the mule described in the indictment was shut up in said building, and should find that the door of said building was opened by the defendant during that night, and the said building was then and there entered by him without the consent and against the will of J. R. Livingston, then the opening of the said door and the entering of the said building was a breaking and entering unlawfully, within the meaning of the law. And should you, from the evidence, be further thus satisfied that the mule described in the indictment was of some value, and was then and there the property of J. R. Livingston, and that said mule was then and there, on the night of the 20th February, 1895, feloniously taken out of said building by the defendant with intent to convert it to his own use, without the con-

sent and against the will of the said owner, you should find the defendant guilty." This instruction was followed by proper instructions as to reasonable doubt of the defendant's guilt. *Held,* That this charge was not liable to mislead the jury, or give them the idea that the breaking and entry alone, without the criminal intent, was a violation of the statute.

6. The court charged the jury, among other matters, that it was a question for them to decide whether "the defendant in good faith honestly believed the mule to be his property, as a reasonable and prudent man." This charge was erroneous. The court should not have limited the defendant to such good faith and honest belief as would be entertained by a reasonable and prudent man. The law deals only with the intention, and a man is not to be punished when he has no guilty intention, and acts in good faith and with an honest belief, although he may not have acted as a reasonable and prudent man in having such faith and belief; but the belief under which he is acting must be really honest and in good faith, and not a mere sham or pretense.

Writ of Error to the Circuit Court for Columbia county.

The facts in the case are stated in the opinion of the court.

*A. J. Henry,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

LIDDON, J.:

The plaintiff in error was convicted in the Circuit Court of Columbia county upon an indictment charging that he "on 20th day of February, A. D. 1895, at and in the county, circuit, and State aforesaid, with force and arms, unlawfully and feloniously did then and there, in the nighttime of said day, break and enter a building then and there situate, to-wit, a stable, the property of J. R. Livingston, with intent to

commit a misdemeanor, to-wit, to take, steal, and carry away, and convert to his own use, one dark bay mule, then and there being found, of the value of fifty dollars, of the personal property of J. R. Livingston, without the consent of the owner thereof to-wit, the said J. R. Livingston."

A motion to quash the indictment upon the grounds, among others, of vagueness and insufficiency, was overruled, and such ruling is assigned as error. The argument made upon this point is that the indictment should have specifically alleged that the mule was in the stable alleged to have been broken and entered at the time of such breaking and entry. The indictment was found under section 2438 of the Revised Statutes of Florida. The statute denounces a penalty upon whoever breaks and enters, or enters without breaking, in the nighttime or in the daytime, any building, ect., with intent to commit a misdemeanor. The breaking and entry with the criminal intent constitutes the gist of the offense. The intent can not, however, be laid in mere general words. It is not sufficient to say that the defendant broke and entered with intent to commit a misdemeanor, but the kind of misdemeanor must be specified. The specification need not be as minute as would be necessary in an indictment for the commission of the misdemeanor. Bis. Cr. Proc. sec. 142. This court has held that it is not even necessary in an indictment of this character to specify what goods and chattels were intended to be stolen. Jones vs. State, 18 Fla. 889. If it was not necessary to specifically describe the goods intended to be stolen, the description of the offense in the indictment was fuller and more specific than it needed to be. If a description of the property intended to be stolen was unnecessary, then it follows, as a matter of course, that it

is not necessary to designate the exact situation of the property, which it was not necessary to name at all. Upon principle we can not see how the question as to whether the property was or was not in the building broken and entered affects the guilt of the defendant. Suppose that, in apprehension of an effort to steal the property, the same had been removed from the building an hour or two before the breaking and entry, and the defendant, not knowing of such removal, breaks and enters with the criminal intent to steal the property. His guilt under such circumstances would be just as complete as if the property were in the building at the time of the breaking and entry. In this matter we fully agree with the view of Chief Justice Shaw, expressed in Josslyn vs. Commonwealth, 6 Met. 236, as follows: "Nor is it necessary to describe the goods intended to be stolen. A general intent to steal goods would complete the offense; and therefore, the averment of such intent, without more, is sufficient to charge it. And the rule would be the same if in fact there were no goods, or no goods of Fogg, in the shop. The crime was complete by the breaking and entering with an intent to steal goods." The motion to quash the indictment was properly overruled.

The second assignment of error is that the court erred in refusing to require the State's witness, J. R. Livingston, to answer more fully the questions asked him on cross-examination by defendant's attorney. Neither the assignment nor the brief of counsel tell us what the questions were which the court refused to require the witness Livingston to answer more fully. No page of the record is designated where the rulings complained of may be found. Under these circumstances, we do not regard it as our duty to search the record to ascertain what questions and answers, and

rulings thereon, are intended to be presented by the assignment and the brief, and we decline so to do. Jacksonville, T. & K. W. Ry. Co. vs. Griffin, 33 Fla. 602, 15 South. 336; Thomas vs. State, 36 Fla. 109, 18 South. 331.

The third assignment of error is that the court erred in admitting the record of Frank De Ferro, a justice of the peace. This record was of a proceeding in which the defendant brought an action of replevin against Livingston, the alleged owner of the same, for the mule described in the indictment. Without detailing the matters shown by the record, it appears that there was no final judgment in the suit upon the merits of the case, but that the same was dismissed for want of prosecution. The defense urged in the present criminal case was that the defendant broke and entered the building of Livingston with no criminal intent, but in good faith, to take possession of the mule, believing the same to be his property, and that he had a right to take him. The apparent object of introducing the justice court record was to rebut this claim of good faith, by claiming that the defendant had voluntarily abandoned his suit for possession of the property. The objections to this testimony which was offered in rebuttal were that the same "was irrelevant and immaterial in the case, but going to prove an estoppel if true, and would not throw any light upon the question of intent." We do not think the record "irrelevant and immaterial." The matter of a voluntary abandonment of his suit for possession of the mule tended to contradict the defendant's statement of good faith and honest belief in taking him in the manner that he did. The defendant in his statement, which did not dispute the taking of the mule,

had already given a very full parol account of the very matters concerning which the record was offered.

The fourth assignment of error is that the court erred in overruling the defendant's motion for a new trial. One of the grounds of the motion was that the court erred in permitting the witness Livingston to testify in rebuttal, over the objection of the defendant, as to the warranty of the soundness of the horse alleged to have been made by one Joseph Wateman at the time the mule in controversy was exchanged for him. The objection to the evidence was that it was irrelevant and immaterial. The horse in question was the one received by Livingston in exchange for the mule which the defendant was charged with an intent to steal. The horse had recently, before the "swap," belonged to the defendant, who swapped him to the witness Wateman for a little mule. Wateman, on the same day he obtained the mule from Livingston, by virtue of an arrangement previously made, swapped the Livingston mule with the defendant for the little mule. Wateman, as a witness for defendant, on examination by defendant's counsel, testified: "I traded the horse to J. R. Livingston for the dark bay mule which he now accuses Wiley Charles of stealing from his stable. I went with this mule to Wiley Charles', and traded the mule to Wiley Charles, defendant, for the little mule I had previously traded to him. The trade between J. R. Livingston and myself was fare and square." Jesse Harris testified on behalf of defendant that he "was present at a horse swap between Wateman and Livingston in November, 1894. Wateman traded Livingston a horse for the mule in controversy. Livingston traded the mule to Wateman, and Wateman traded the mule afterwards to Wiley Charles. It was a swap. Wateman told Livingston

that the had a swapping horse, and Livingston said he had a mule. Livingston told Wateman: 'I warrant this mule to be as sound as a dollar. Do you warrant the horse?' Wateman said: 'For what you see.' Livingston rode Wateman's horse to see if he liked him. The horse was blowing when he got off, and Wateman said: 'It is there. I don't deny it.' " We think the evidence objected to was clearly in rebuttal of evidence offered by the defendant. Neither do we, in consideration of the circumstances of this case, regard the evidence as irrelevant and immaterial. The evidence shows a contention on the part of the defendant that the mule was his property, and not the property of Livingston. To meet this contention, Livingston claimed that he had been induced to part with his property through fraud and misrepresentation, which would have nullified the trade. The statements of Livingston, objected to, tend to show that he would not have parted with the possession or title to his property if he had not been induced thereto by fraudulent representations as to his soundness, and that the mule still remained the property of Livingston, as against the defendant, unless the defendant were a bona fide purchaser for value, without notice of the fraud.

The seventh ground of the motion for a new trial was the giving of the following charge by the court to the jury: "In your efforts to come to a correct verdict, you may first consider whether, from the evidence, the building or stable was the property of J. R. Livingston, was broken and entered as alleged in the indictment. If, from the evidence, you are satisfied that it was closed on the night of the 20th February, 1895, and that the mule described in the indictment was shut up in said building, and should find that the door of said building was opened by the defendant during

that night, and the said building was then and there entered by him without the consent and against the will of J. R. Livingston, then the opening of the said door and the entering of the said building was a breaking and entering unlawfully, within the meaning of the law. And should you, from the evidence, be further thus satisfied that the mule described in the indictment was of some value, and was then and there the property of J. R. Livingston, and that said mule was then and there, on the night of the 20th February, 1895, feloniously taken out of said building by the defendant with intent to convert it to his own use, without the consent and against the will of the said owner, you should find the defendant guilty. If you have a reasonable doubt, after a careful consideration of all the evidence, of the guilt of the defendant, you should find a verdict of not guilty." The objection urged against the charge is that portion of it which says, "then the opening of the said door and the entering of the said building was a breaking and entering unlawfully, within the meaning of the law," leaves the jury to infer that the breaking and entry alone, irrespective of the intent, was unlawful in contemplation of the statute under which the indictment was found; or, in other words, that the breaking and entry of itself constituted the offense charged. Viewing the whole of the portion of the charge objected to, we do not think it liable to mislead the jury. The court, in the sentence wherein the language complained of occurs, only had reference to some of the constituent elements of the offense, and not to the offense as a whole. The jury were told only that such breaking and entry, if proven, were unlawful. They were not told that proof only of the breaking and entry were sufficient to convict the defendant. On the contrary,

they are instructed that if they further (i. e. after finding proof of the breaking and entry) find that said mule was feloniously taken out of said building by the defendant with intent, etc., they should find the defendant guilty. What is necessary to constitute a breaking and entry having been defined, and what would constitute a felonious taking being defined in the next succeeding paragraph of the charge, there is no reason to suppose that the jury did not understand the whole charge given them, or that they were mislead.

The eighth ground of the motion for new trial was the charge given the jury by the court as follows: "Whether or not in the case at bar, in the light of the evidence as to how the defendant came to claim said mule, and in the light of the litigation and decision in regard to the rights of property in the mule, as detailed in the evidence, the defendant in good faith honestly believed the mule to be his property, as a reasonable and prudent man, or whether he broke and entered the building or stable, and took the mule therefrom, with a felonious intent, as charged in the indictment, are questions for you to decide from all the evidence." The objection argued against this charge is that the court should not have limited the defendant to such good faith and honest belief as would be entertained by "a reasonable and prudent man." It is contended that the law deals only with the intention, and that a man is not to be punished when he has no guilty intention, and acts in good faith and with an honest belief, although he may not have acted as a reasonable and prudent man in having such faith and belief. We think the objection well taken. A question very similar was presented to this court in the case of Baker vs. State, 17 Fla. 406, text, 409.

The offense charged was larceny, and the lower court in that case charged that "the belief of the accused that he has a right to property which really belongs to another is no excuse for taking it, unless the testimony shows some reason therefor." This court held that such charge was liable to mislead the jury, and quoted with approbation Bish. Cr. Law, vol. 2, sec. 851, as follows: "In all caes where one in good faith takes another's property under claim of title in himself, he is exempt from the charge of larceny, however puerile or mistaken the claim may in fact be. And the same is true where the taking is on behalf of another, believed to be the true owner. Still, if the claim is dishonest—a mere pretense—it will not protect the taker." Then, defining the offense for itself, the court said: "The gist of the offense is the intent to deprive another of his property in a chattel, either for gain or out of wantonness or malice to deprive another of his right in the thing taken. This can not be where the taker honestly believes the property is his own or that of another, and that he has a right to take possession of it for himself or for another, for the protection of the latter."

So, in this case, we are of the opinion that the good faith and honest belief of the defendant need not be such as would be entertained by a reasonable and prudent man, provided it was really honest and in good faith, and not a sham or pretense. An investigation of many cases fails to show us one in which it has been held that the good faith and honest belief of a defendant in such cases must be such as a reasonably prudent man would entertain. Many cases hold contrary. In the case of Neely vs. State, 8 Tex. App. 64, it is said: "If, in a trial for theft, the defense is that the taking was not with a fraudulent intent, but done

under a bona fide claim of ownership or right, the merits of the defense are not contingent upon the care or prudence exercised by the accused to ascertain the ownership of the property. A charge was erroneous, therefore, which in effect instructed for conviction if the accused took the property of another under the honest belief that it was his own, but without exercising ordinary care or prudence to identify it as such." In Morrisette vs. State, 77 Ala. 71, text, 74, the court said: "Where one, therefore, takes the property of another, honestly believing that he has a right to it,— or, in other words, under a bona fide claim of right,— there can be no larceny, although the taking may constitute an inexcusable trespass." In State vs. Bond, 8 Iowa, 540, the law is stated thus: "If the circumstances show that the defendant acted in good faith, under a claim of title in himself, he is exempt from the charge of larceny, although his claim has no foundation in right." In this case we are free to say that if the evidence had been ample to show a want of good faith or honest belief in the defendant, and to justify his conviction, and it plainly appeared that substantial justice had been done, we might be disposed to regard the error in this charge as immaterial. Without entering into extended comment upon the evidence, as there is to be a new trial in the case, we think it proper to state that, in our opinion, it was barely sufficient—if sufficient at all—to justify the verdict. Therefore, where the evidence is so meager and doubtful, the misdirection of the jury by the court becomes material. It may have been upon this very point, that the defendant did not show that he acted as a reasonable and prudent man in arriving at his honest belief and entertaining his good faith, that the jury predicated their verdict against him.

For the errors stated, the judgment of the court below is reversed, and a new trial awarded.