## FRED WHEELER v. STATE OF NEBRASKA.

### FILED JULY 12, 1907.   No. 15,024.

1. Criminal Law: COMPLAINT. A complaint which charges the defendant with burglariously breaking and entering a storeroom with intent to steal the goods and property of the owner need not allege the value of the property stolen or intended to be stolen. And a preliminary examination on such a complaint will sustain a prosecution on an information charging the same facts, together with the value of the property actually stolen.

2. Witnesses: IMPEACHMENT: REDIRECT EXAMINATION. Where, on the cross-examination of the prosecuting witness, it is sought to discredit him by attempting to show that he has paid money to procure evidence against the defendant, he may, on his redirect examination, explain the transaction, under proper restrictions, by which it is sought to discredit him, although such matter of explanation would not have been admissible in evidence on his direct examination.

3. Criminal Law: VERDICT: REVIEW. A judgment of conviction in a criminal case will not be set aside because of conflicting evidence, where the evidence of the state, if believed by the jury, is sufficient to sustain the verdict.

4. ——: INSTRUCTIONS: REASONABLE DOUBT. An instruction defining a reasonable doubt is not rendered prejudicial to the defendant by the use of the word "fully," as, for example: "If the jury are fully satisfied to a moral certainty of the truth of the charges made against the defendant, then they are satisfied beyond a reasonable doubt." Such an instruction is more favorable to the defendant than to the state.

5. ——: ——: CREDIBILITY OF WITNESS. An instruction by which the jury were informed "that it is proper for them to consider the interest that a witness may be shown to have in the result of the case, his apparent capacity and understanding, the probability or improbability of his statement, his manner of giving testimony, and all other facts and circumstances connected therewith," cannot be said to permit the jury to go outside of the evidence in determining the weight and credibility of the testimony of the witness.

6. ——: ——: REFUSAL. It is proper to refuse instructions, tendered by the defendant, which the court has given in substance on his own motion.

ERROR to the district court for Clay county: LESLIE G. HURD, JUDGE. *Affirmed.*

*T. H. Matters, Charles J. Greene* and *Ralph W. Breckenridge,* for plaintiff in error.

*W. T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

BARNES, J.

Fred Wheeler, hereafter called the defendant, was convicted of the crime of burglary, and has brought the case here for review.

It is contended by his counsel that the information should have been quashed because the defendant never had a preliminary examination on the charge contained therein. It appears that the defendant, and one Harry Le Baron, were jointly charged, in the county court of Clay county, with breaking and entering the store of Martin & Haggard, in the village of Trumbull, with intent to steal. They were arrested and brought before the court, and on the 3d day of October, 1906, Le Baron waived preliminary examination, and was bound over to the district court. The hearing of the defendant was continued until the 18th day of that month, at which time testimony was taken both for the prosecution and the defense; and the county judge, as an examining magistrate, found there was probable cause to believe that the offense charged had been committed by the defendant. Thereafter, and in due season, an information was filed in the district court for said county charging said parties with the same offense. A motion to quash was thereupon filed by the defendant, based on the ground that he had never had a preliminary examination, which motion was overruled. The defendant entered a plea of not guilty, and was thereafter tried and convicted, as above stated. The argument is that because the complaint filed before the magistrate did not contain the word "value," or, in other words,

allege that the defendant broke and entered the building with intent to steal goods and property of value, it was void, and failed to state any offense punishable under the laws of this state; that because the information did contain the word "value," a different charge was preferred against the defendant in the district court from that contained in the complaint. Breaking and entering a building, with intent to steal property therefrom, constitutes the crime of burglary. By the provisions of section 48 of the criminal code it is made a felony for a person to break and enter a storeroom, with intent to steal property of any value. While the statute says property "of any value," we do not regard the words "of value" as being necessary ingredients of the charge. The allegation in the complaint was that the defendant did break and enter, with intent to burglariously steal, take and carry away the goods and property of the said Martin & Haggard. It has been held by the court of last resort in the state whose criminal code we adopted that if the allegation is of stealing goods and chattels, or goods and merchandise, it is not necessary to allege their value. *Spencer v. State,* 13 Ohio, 401. Again, the record clearly shows that the information was based upon the same transaction for which the defendant had a preliminary examination. In *Hockenberger v. State,* 49 Neb. 707, it was said, if the charge in the complaint is substantially the same as in the information, the plea of variance is unaviling. Where a preliminary examination was held upon a complaint charging the crime of burglary, with intent to steal, and the information filed by the county attorney in the district court charged the same offense, but with intent to commit a rape, it was held that the same crime, to wit, burglary, was described both in the complaint and in the information. *Alderman v. State,* 24 Neb. 97. So it would seem clear that the district court was right in refusing to quash the information.

Defendant's second contention is that the court erred in admitting and excluding certain evidence. It appears

that Martin, one of the owners of the store in question, had paid one William Rigg $10 in procuring his affidavit as to what he knew about who had broken and entered the store, which fact was brought out on cross-examination, and counsels' argument is directed, with particular force, to the following question and answer of the redirect examination: "Q. You may tell the conversation that you had with Rigg at that time. A. Well, he told me that Mr. Le Baron had confessed to him and another man in jail here at Clay Center that he, Le Baron, and Wheeler, had entered the store and taken the money." We find that this evidence was not objected to, and it may be further said that it was an explanation of matters brought out on cross-examination by the defendant's counsel. An attempt was made to discredit the testimony of the prosecuting witness by showing that he had been guilty of bribing witnesses, or, in other words, had paid money to procure testimony against the defendant. So, on his redirect examination, he was permitted to explain the transaction which had been partly brought out by the cross-examination. It was made clearly to appear that the prosecuting witness had not paid money to any one to testify, or to procure testimony to be used on the trial of the case. It was further shown that the witness had been informed that Rigg knew something of the transaction, and he therefore thought it advisable to procure Rigg's affidavit stating what he knew about the matter. In making this explanation the witness gave the testimony which is so severely criticised. As before stated, the evidence was not objected to. No motion was made to strike it from the record, and therefore error cannot be predicated upon its admission. Again, the matter comes squarely within the rule announced in *Craig v. State,* 78 Neb. 466, where it was held: "Where counsel for the defendant, by his cross-examination, has made it necessary for a prosecuting witness to give such evidence by way of explanation of his own conduct, * * * he may, under proper restrictions, give such evidence on his redirect

examination," although it would not have been admissible as evidence in chief.

Defendant also complains because his counsel was restricted in his cross-examination of Le Baron. It appears that Le Baron testified for the prosecution, and stated in substance that he and the defendant broke and entered the store of Martin & Haggard at the time alleged in the information, and stole therefrom $45 in money and a revolver; that after leaving the store they got into the defendant's buggy, and after driving about a mile divided the money, the defendant taking $25 of it and Le Baron $20; that the defendant also kept the revolver; that they committed the robbery in order to have some money to spend on the Fourth of July following; that on the evening of July 3 they went to Hastings, and stayed together at the Bostwick hotel, on the following day went to Glenville, and late that night returned home to Trumbull. On his cross-examination Le Baron was asked: "Q. Do you hope to be relieved of any part of your punishment? Do you? A. I hope to. Q. Yes, you do? A. I hope to, yes. Q. That is why you are giving this testimony this way? A. Yes, partly." After the redirect examination of the witness, in which he testified that no promise of immunity had been made him by the prosecution, and that he was not influenced in giving his testimony by any hope of a mitigation of his punishment, he was again asked by counsel for the defendant: "Q. You hope, don't you, by making this statement to the court and jury, you will be relieved from a part of the punishment you would otherwise suffer?" This was objected to by the state, and the objection was sustained. It appears that the witness had answered the question above quoted several times, and it was right and proper for the court to put an end to the investigation. The defendant was deprived of no substantial right thereby. The whole matter had been fully investigated, and the motive and interest of the witness was fully disclosed.

Defendant's third contention is that the evidence is not

sufficient to sustain the verdict. Without attempting to quote any considerable portion of the testimony, we may say that it appears that the defendant and Le Baron had been bosom friends and associates for sometime previous to the commission of the crime charged; that on the night of July 2 defendant had driven from his home, near the village of Trumbull, to that town; that he spent the evening there with Le Baron; that they were together riding in the defendant's buggy late in the night; that they both claimed that they rode down towards the depot, where several men were at work taking down a header; that two ladies were present at the time they drove down there; that soon thereafter they came back to the store of Martin & Haggard, and Le Baron says they both went in through a cellar window, then up into the store room to the money drawer, and took from a little box $45 in bills; that Le Baron took the money from the drawer in the presence of the defendant, who went to the safe and took a revolver; that they left the building, and after driving some distance divided the money, defendant taking $25 and Le Baron $20 and that defendant retained the revolver. They then went back to town, Le Baron got out and went to the place where he was stopping, and Wheeler went home. It also appears that they had arranged to go to Grand Island on the following day, but finally concluded to, and did, go to Hastings, where they stayed at the Bostwick hotel, and the next day they went to Glenville and attended the celebration. They drove the same horse and buggy which they used on the evening of the robbery, and defendant used the revolver in shooting blank cartridges. At about 11 o'clock that night they returned to Trumbull. The entering of the store and the stealing of the money and revolver was denied by the defendant, but in all other matters he corroborated the evidence of Le Baron. He claimed, however, that he was at home by a quarter to 11 o'clock on the night of the robbery, and his father, mother and one Rigg testified that defendant came home about 11 o'clock. There were many circumstances corrob-

orating the testimony of Le Baron that defendant was in town as late as 1:30 o'clock that night, which was about the time when the robbery was committed. Mrs. Gueck, the wife of one of the men who was taking down the header, went over to where the men were working, in company with a Miss Hamilton, to see when her husband would be ready to go home. She testified that it was 12 o'clock when she saw Le Baron and the defendant drive up in a buggy to where they were, while she was there talking to her husband. Her testimony was corroborated by a Mr. Wass, by Miss Hamilton, and by her husband, and it was shown that she and Miss Hamilton were the only ladies that were there that night. This, taken in connection with the defendant's admission that he drove down to where the men were working on the header, and saw the ladies there, makes it practically certain that the defendant was in town for more than an hour after it was claimed by his witnesses that he was at home. It is sufficient to say that the state's evidence, if believed by the jury, was amply sufficient to sustain the verdict.

Defendant in his fourth assignment of error complains of the giving of certain instructions by the court, and of the refusal to give other instructions requested by him. Objection is made to the first instruction because the court, in speaking of J. A. Haggard, who was a member of the firm of Martin & Haggard, referred to him as "Archie Haggard," and it is said that his full and true name was not indorsed upon the information. His evidence was not objected to for that reason, and it has been repeatedly held that the indorsement on the information of the initials of the witness with his surname is a sufficient compliance with the statute.

Complaint is also made of instruction No. 3 because the court used the expression: "If, after a careful and impartial examination and consideration of all of the evidence in the case, you can say that you feel an abiding conviction of the guilt of the defendant, and are fully

35

satisfied to a moral certainty of the truth of the charges made against him, then the jury are satisfied beyond a reasonable doubt." Exception is taken to the use of the word "fully." We deem it unnecessary to discuss this question because the instruction, if objectionable at all, was most favorable to the defendant, in that it required the jury to be *fully* satisfied to a moral certainty of his guilt; whereas, the law only requires the jury to be satisfied, not *fully* satisfied, of defendant's guilt.

The correctness of the fourth instruction is challenged because the jury were told: "You are the sole judges of the credibility to be given to the testimony of each and every witness who has testified before you. You ought not to arbitrarily disregard the testimony of any witness, but give to the testimony of each and every witness such consideration as, in the light of all the facts and circumstances shown by the evidence before you, you think the same is fairly entitled to. And in this connection it is proper to consider the interest that a witness may be shown to have in the result of the case, his apparent capacity and understanding, the probability or improbability of his statement, his manner of giving his testimony, and all the other facts and circumstances connected therewith." Objection is made to the clause last above quoted because it is claimed it permitted the jury to go outside of and beyond the evidence. This objection is without merit. It seems to us by a fair construction of the language the jury were clearly limited to a consideration of the facts and circumstances shown by the testimony of the witnesses and the manner in which they gave their evidence. There is no similarity between this instruction and the one referred to by counsel in the case of *Long v. State*, 23 Neb. 33. There the jury were told: "If you should conclude from the evidence, *which includes not only the sworn testimony of the witnesses who have testified, but all the circumstances surrounding the tragedy,* that the deceased was killed," etc., while in the case at bar they were restricted in their consideration to the testi-

mony itself and the manner in which the witnesses gave it.

Defendant offered four instructions, and the refusal of the court to give them is assigned as error. It appears that the substance of these instructions was given by the court on his own motion, and for that reason they were properly refused.

The foregoing disposes of the defendant's assignments of error. We may say, in passing, however, that a large part of his brief is devoted to what we deem an unwarranted criticism of the conduct and motives of the county attorney, the officers of the court and the witnesses who testified against the defendant. We say this attack was unwarranted, for a careful reading of the record fails to disclose any misconduct on the part of any one connected with the trial. We are satisfied that the evidence produced by the state was amply sufficient to sustain the verdict. It was simply the misfortune of the defendant that the witnesses for the prosecution were believed by the jury, rather than those who were produced by the defendant.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.