## HENRY SCHULTZ v. STATE OF NEBRASKA.

FILED FEBRUARY 28, 1911.   No. 16,940.

1. **Burglary**: INFORMATION: SURPLUSAGE. An allegation in an information charging a violation of section 48 of the criminal code, that the building was entered during the night season, is surplusage and need not be proved.

2. ————: ELEMENTS. One who unlawfully, wilfully, maliciously and forcibly breaks and enters a mill building with the intent to steal

property of any value is guilty, although there is no personal property therein. The third paragraph of the syllabus in *Bergeron v. State*, 53 Neb. 752, overruled.

3. ————: Sufficiency of Evidence. The testimony of one witness, if relevant and accepted by the jury, may sustain a conviction of burglary, even though the accused positively denies under oath that he committed the offense.

4. ————: Instructions: Alibi. In a prosecution for burglary, the accused having admitted that, 15 minutes prior to the time a person was detected attempting to rifle a safe in the office of a mill building, he was in close proximity thereto, and one witness having identified him as the guilty party, it is not prejudicial error for the court, after it has fully instructed as to the burden of proof, the presumption of innocence and as to every element essential to constitute the crime, and that if the proof is not beyond all reasonable doubt as to all of those elements the jury should acquit, to refuse to specifically instruct concerning the defense of an alibi, although the accused testified that at the precise time the burglary was committed he was about 20 rods distant from the mill building.

ERROR to the district court for Jefferson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*C. H. Denney,* for plaintiff in error.

*Grant G. Martin, Attorney General, Frank E. Edgerton* and *F. L. Rain, contra.*

ROOT, J.

Henry Schultz prosecutes a petition in error to reverse a judgment of conviction of the crime of burglary.

The proof is satisfactory that the mill was entered during the night season, but the fact is immaterial. Section 48 of the criminal code does not now require that the breaking and entering shall have occurred during the night season.

Counsel for the accused argues that the evidence does not support the verdict, and especially is deficient with respect to the value of the property within the mill at the time of the burglary. About 5 o'clock P. M., June

30, 1910, the accused in company with several companions journeyed from Fairbury to Jansen for the purpose of indulging in intoxicating liquors. The train upon which Schultz expected to return was due at Jansen at 7:45 P. M., but did not arrive until 9:05. About 8:45 the witness Heidulk noticed an open window in the office of a mill situated south of the railway right of way and went to the building to investigate. After lighting a match and thrusting his head within the opening, he saw a man, positively identified by the witness as the accused, upon his knees before the open door of the office safe and so close to the window that Heidulk could touch him. After some words between these parties the marauder departed from the mill, evidently through a window in another part of the building, and was pursued a distance westward. Shortly thereafter the train arrived and the accused was taken therefrom before it departed. There is a conflict in the evidence, but the jury might find that Mr. Schultz sought to conceal his features by pulling his hat over his eyes at the time the village marshal entered the car. The evidence is satisfactory that the accused, when searched at the village jail, said to Mr. Heidulk: "You are the fellow that turned in the alarm. I will get even with you." The accused admits that he was in close proximity to the mill within 15 minutes of the time testified to by Heidulk, but testifies, in substance, that he was there for the purpose of locating an intoxicated companion, and immediately after failing in his search returned to the station, which is north of the right of way, and, after examining two empty cars on a track north of the station, went west to the station latrine and there remained until the train arrived. The accused positively denies having entered the mill. The testimony of a Mr. Belden, given during the preliminary examination, was transcribed and introduced in evidence during the trial of this case. The witness testifies in substance that, in response to his suggestion that the accused should search for their mutual friend Kinney, Schultz went to

the mill, and subsequently returned and inspected two empty cars on the track north of the station, but the witness admits· that for about 15 minutes before the train arrived the accused disappeared from view, and during that time Belden noticed some person near the window of the mill office with a lighted match. Kinney was a stranger in the community, but formed an acquaintance with Belden and the accused during their trip to and sojourn in Jansen, at which place he entertained them in the saloon and loaned a dollar to Schultz. Kinney did not testify during the trial in the district court, and it is argued that he is the guilty man. While the evidence discloses that Kinney and the accused man are about the same height and size, the jury were justified in rejecting this argument if it were made to them. The evidence is in accord that, about an hour before Heidulk noticed the open window, Kinney was in a drunken stupor, whereas the man in the mill was active and outran his pursuers. Heidulk had known the accused for some eight years before the night in question, and sustained himself upon cross-examination. If the jury were satisfied beyond a reasonable doubt that the witness could and did identify the accused as the man Heidulk saw kneeling before the open safe, it cannot be said the evidence as to identity is insufficient.

No witness testified that the property in the mill was of any value, nor does the proof show there was any personal property therein save the safe and its contents and an office desk. The owner testified that nothing other than some papers was missing and they were subsequently found in a barrel near the mill. These documents were of sufficient importance to impel him to search for them. The jury would be justified in finding that the documents were of some ·value.

In *Wheeler v. State*, 79 Neb. 491, we followed *Spencer v. State*, 13 Ohio, 401, and held that one who wilfully, maliciously and forcibly breaks and enters any of the buildings described in section 48 of the criminal code, with

the intent to steal property of any value which he assumes is within the building, is guilty of a violation of that section, and that the value of the property actually within the building is not a necessary ingredient of the crime. Our criminal code was adopted from Ohio, and the decisions of the Ohio supreme court construing the criminal code of that state are persuasive whenever a like question is considered in this court. To the same effect is *State v. Beal,* 37 Ohio St. 108. These decisions are in harmony with the general rule both in England and in America. 2 Bishop, New Criminal Law (8th ed.), sec. 114. *Winslow v. State,* 26 Neb. 308, does not sustain the accused's position. The indictment in that case did not allege the name of the owner of the burglarized building, and did not charge that the intent was to steal property therein. The writer of the opinion suggests that, if the accused knew that there was no property in the building, his entry would not have been with the intent to steal, and we do not hesitate to reaffirm the proposition. We did not say that the criminal intent might not exist if the building were vacant and the defendant did not know that fact, nor did we say that in order to sustain a conviction there must have been proof of the value of whatever property was contained therein. In *Ashford v. State,* 36 Neb. 38, we again held that the specific intent alleged must be established. In *Williams v. State,* 60 Neb. 526, the accused was acquitted of the charge of burglary, and the conviction of larceny was reversed because of the erroneous instruction with regard to that crime. *Bergeron v. State,* 53 Neb. 752, lends some support to the argument of counsel for the accused, but, in view of the decision in *Wheeler v. State, supra,* the district court was right in refusing to grant a new trial because of the condition of the evidence with respect to the value of the personal property within the mill. The third paragraph of the syllabus in *Bergeron v. State, supra,* has for all practical purposes been overruled, and, to the end that there may be no further uncertainty on the subject, it is now formally

overruled. There was therefore no failure of proof upon any material allegation in the information.

The court did not err in refusing to give the instructions requested concerning an alibi. The accused admits being in the immediate neighborhood of the mill at the time it was burglarized. The court at the request of the accused instructed the jury that, "to warrant a conviction, each fact necessary to. establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of guilt." The court also minutely defined all of the elements of the crime of burglary, and told the jury that the accused was presumed to be innocent until proved guilty beyond all reasonable doubt, that if the state failed to thus establish a single element of the crime, they must acquit, and that it was their duty, if possible, to reconcile the testimony with the presumption of innocence. The jury therefore, assisted as they were by the instructions, must have understood that, if the accused was in or near the station closet at the time Heidulk saw the burglar within the mill, Schultz could not be guilty, and, further, that, if they had any reasonable doubt that Heidulk could or did accurately identify the accused as the guilty person, they should acquit. There was therefore no prejudicial error in not giving the instructions requested. *State v. Shroyer,* 104 Mo. 441.

Counsel for the accused argues that, since his client denied under oath that he was in the mill and no witness corroborates Heidulk, the conviction should not be permitted to stand. We have referred to some facts tending to corroborate Heidulk, but if the case stood sustained by Heidulk's testimony alone and contradicted by the accused, if the testimony given by the witness for the state seemed reasonable with nothing to suggest that he was connected with the offense, it would be sufficient to sus-

tain the verdict. 12 Cyc. 486. We are of the opinion there is sufficient proof that access was not gained to the mill through an open door or window, but that the entry was forcible.

The accused was tried in a community where he had resided for many years; some of the jurors must have known him, and, with that knowledge aided by his appearance on the stand, were in a situation to find whether Heidulk or the accused told the truth, and to give credit accordingly.

Upon the entire record, we find no error prejudicial to the accused, and the judgment of the district court is

AFFIRMED.