CHARLES R. LARSON, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

73 N. W. 2d 388

Filed December 2, 1955. No. 33817.

*John C. Burke,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Plaintiff in error, hereinafter called defendant, was accused of the offense of burglary. He denied the charge but was convicted. A motion for a new trial and a motion in arrest of judgment were each denied and he was adjudged to be confined in the Nebraska State Reformatory.

The information alleged that on or about the 3rd day of October 1954, the defendant in Douglas County did willfully, maliciously, and forcibly, with intent to steal property of value, break and enter into the building located at 3562 Farnam Street in Omaha, Nebraska, which building was occupied by Phillip Crandell, doing business as Crandell Furs. The defendant timely but unsuccessfully challenged the sufficiency of the information to state a crime by interposing a motion to quash it because it was not alleged therein that the breaking and entering into the building was with the intent to steal property within the building at the time it is claimed the crime was committed. The action of the court in denying the motion to quash the information is an assignment of error in this court.

The relevant statute contains the following: "Whoever willfully, maliciously and forcibly breaks and enters into any * * * shop, office, storehouse * * * or other private building * * * with intent to steal property of

any value, shall be punished * * *." § 28-532, R. R. S. 1943. The essence of the argument of defendant in support of his contention in this regard is that an information charging the crime of burglary must allege that the breaking into the building described was with intent to steal property of value then within the building. He says in effect that intent to steal property of value presently in the building is an essential element of the crime of burglary. The statute defining the crime of burglary quoted above does not so provide.

It was decided in Wheeler v. State, 79 Neb. 491, 113 N. W. 253, that one who willfully, maliciously, and forcibly breaks and enters any structure described in the statute defining the crime of burglary, with intent to steal any property of value which he assumes is within the building, is guilty of a violation of that statute and that the value of the property actually within the building is not a necessary ingredient of the crime. The exact language thereof in reference to this is: "By the provisions of section 48 of the criminal code (now § 28-532, R. R. S. 1943) it is made a felony for a person to break and enter a storeroom, with intent to steal property of any value. While the statute says 'property of any value,' we do not regard the words 'of value' as being necessary ingredients of the charge."

The above case was approved in Schultz v. State, 88 Neb. 613, 130 N. W. 105, 34 L. R. A. N. S. 243, in which it is stated: "One who unlawfully, wilfully, maliciously and forcibly breaks and enters a mill building with the intent to steal property of any value is guilty, although there is no personal property therein."

The contention of the defendant in Pointer v. State, 114 Neb. 13, 205 N. W. 574, was that an information charging burglary must allege that the property which the accused intended to steal possessed some value. The comment of the court in reference thereto is as follows: "An information which charges one with feloniously, wilfully, maliciously and forcibly entering a

building with intent to steal property is not defective in omitting to allege that such property was of some value." The effect of this is that the value of the property which the accused intended to steal is not an ingredient of the crime and that the words of the statute "of any value" are immaterial to the crime of burglary. This is a convincing indication that the substance of the crime is the breaking into and entering a building with the intent to steal and that intent may exist although unknown to the burglar the building contains nothing of value or is literally without anything in it.

The Criminal Code of Nebraska was adopted from Ohio and the decisions of the Supreme Court of that state construing its criminal code are persuasive whenever a like problem is considered by this court. Schultz v. State, *supra.*

In State v. Beal, 37 Ohio St. 108, 41 Am. R. 490, the court said: "The judge presiding at the trial seems to have been of the opinion, that the averment of an intent to steal the personal effects or property of the owner of the building broken into, is not sustained, unless property belonging to such owner and which the accused intended to steal, was found within the building. * * * In this we think the court erred. Burglary, under the statute, involves the ingredients of breaking and entering the building * * * forcibly and maliciously, with intent to commit a felony, or with intent to steal property of some value. It differs but slightly from burglary at common law. 2 East P. C. 484. The offense is complete when the facts entering into the above definition exist, whether the intent is executed or not." See, also, Spencer v. State, 13 Ohio 401.

The Minnesota court said in State v. Golden, 86 Minn. 206, 90 N. W. 398: "The gist of this offense is the breaking and entering any building with intent to commit a crime therein * * *. It was not necessary to allege in the indictment that there were any goods in the warehouse at the time of the breaking and entry thereof which

could be the subject of larceny. A breaking and entering the building with intent to steal chattels therein completes the offense, even if there be at the time in fact no goods in the building. If the defendant supposed that there were goods in the warehouse, and broke and entered it with the intent to steal them, the fact that he was mistaken in his belief does not lessen the criminal intent with which he did the act. 'The sting of the crime is, in short, the guilty purpose, without reference to the possibility of accomplishing it in any given instance.' "

In People v. Shaber, 32 Cal. 36, the defendant after his conviction of breaking and entering a house with intent to commit larceny moved in arrest of judgment on the ground that the indictment failed to state that he intended to feloniously steal, take, and carry away any property then being in the house entered. The court said: "The indictment charges the offense in the very terms used in defining it * * *. As a larceny actually committed is not made an element in the offense, it cannot be needful to allege one, either generally or by an averment of the facts entering into and constituting its definition. And as a forcible entry, etc., with a larcenous intent is all that is made essential to the crime, we consider that a conviction would be due even though it should appear that there were no goods in the building at the time the entry was made. The forcible entry and the intent being found or given, the crime would be complete even though it should turn out that, contrary to the calculations of the burglar, the building was empty." See, also, State v. Emmons, 72 Iowa 265, 33 N. W. 672; Charles v. State, 36 Fla. 691, 18 So. 369; Hale v. Commonwealth, 98 Ky. 353, 33 S. W. 91; Harvick v. State, 49 Ark. 514, 6 S. W. 19; Edwards v. State, 171 Ark. 778, 286 S. W. 935; Ford v. State, 80 Fla. 781, 86 So. 715; Annotation, 34 L. R. A. N. S. 243; 9 Am. Jur., Burglary, § 29, p. 255; 12 C. J. S., Burglary, § 39, p. 706.

In order to make out, within the meaning of the stat-

ute quoted, the crime of which defendant was convicted, it must be alleged in the information, and of course proved, that the accused did feloniously break and enter some structure as therein described with intent to steal property of value. It is not required that it be alleged or established, except as a fact bearing on the guilt of the accused, that the place broken into and entered contained at the time chattels or other property of value, for a person under mistaken belief that a place ordinarily used as a depository for such chattels or property of value contains property the subject of larceny may, feloniously and with intent to steal, break into it and be consequently as guilty of the offense in question as if the place had actually been filled with property.

The information alleged the offense against defendant in terms of the statute. This is conceded by defendant. The statute clearly contains the elements necessary to constitute the offense intended to be punished. This is all the law requires. Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111; Puckett v. State, 144 Neb. 876, 15 N. W. 2d 63; Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868; Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873. The information was not defective for any reason urged by defendant and the motion to quash it was correctly denied.

The case of Winslow v. State, 26 Neb. 308, 41 N. W. 1116, is confidently relied upon by defendant to establish his contention that the information is fatally insufficient for the reason it does not aver that the property defendant intended to steal was in the building described at the time it is alleged it was broken into and entered. The Winslow case is discussed in State v. Schultz, *supra,* in this manner: "The writer of the opinion suggests that, if the accused knew that there was no property in the building, his entry would not have been with the intent to steal, and we do not hesitate to reaffirm the proposition. We did not say that the criminal intent might not exist if the building were vacant and the de-

fendant did not know that fact, nor did we say that in order to sustain a conviction there must have been proof of the value of whatever property was contained therein." The discussion in the Winslow case went far beyond any matter presented for decision. It is, to the extent that it maintains that an information charging the crime of burglary must allege that the breaking and entering into the building was with intent to steal property of value then in the building, unsound and it should be and is disapproved and overruled.

Defendant contests the sufficiency of the evidence to justify or sustain his conviction of burglary. He alleges error of the court in submitting this issue to the jury. The evidence is to this effect: The place of business of Crandell Furs, a merchandising concern dealing in fur garments and fur pieces, was at 3562 Farnam Street in Omaha at the time important to this case. The east side of the building occupied was 100 feet west of the west side of Thirty-fifth Avenue. It was on the north side of Farnam Street and the front and main entrance to the building was to the south. There was a doorway in the center of the front of the building and a large plate glass display window on each side of the door. There were facilities for displaying merchandise in spaces inside and adjacent to the windows. Harkerts restaurant was in the second building east of the Crandell place of business. The first street west of the Crandell store is Thirty-sixth Street. The Blackstone Hotel is at the southwest corner of the intersection of Thirty-sixth Street and Farnam Street.

The Crandell store discontinued business for the week and it was closed and locked between 5:30 and 6 p. m., on Saturday, October 2, 1954. It was protected by a central station burglar alarm system known as A. D. T. The system was constructed so that all openings in the store had to be closed and secured before the store could get a ring-out signal at closing time. The circuits were broken by entry into the building and thereby A. D. T.

was at its place of business notified of such entry by signal device. The assistant manager of the Crandell store closed and locked it and got the close-out signal on Saturday, October 2, 1954. At that time there were displayed in the window to the east of the front door, on a figure or manikin clothed with a skirt, a silver-blue mink paw coat of the value of about $800 and on a small stand near the window a silver-blue mink scarf of the value of $179, and a ranch mink scarf of the value of $149.

The night manager of the Blackstone Hotel on the early morning of Sunday, October 3, 1954, heard an unusual sound. It was a hissing sound sufficient to alarm her and she went from the lobby of the hotel out its front door to the east so that she was on the west side of Thirty-sixth Street and near the south side of Farnam Street. As she was doing this, in addition to the first noise that had attracted her attention, she heard the breaking or shattering of glass. She could clearly see the area to the northeast to the intersection of Thirty-fifth Avenue and Farnam Street. She saw that a window in the front of the Crandell store had been broken. She saw a man who was not heavy but sort of slender and young running to the east through a temporary walk in front of a building that was in process of construction immediately west of Thirty-fifth Avenue. She saw him go to and get into an automobile at the end of the temporary walk and the north part of the intersection of Thirty-fifth Avenue and Farnam Street. The body of the automobile was maroon with a tan top. It was facing north on Thirty-fifth Avenue and after the man entered it, it got away as fast as it could travel. There was no other vehicle in the view of the witness at that time and all the things related by her transpired very fast and in a very few seconds. She called the police and told them what she had heard and seen. The time of this was fixed by her at between 3:40 and 3:50 a. m.

There were two police officers of the cruiser division

of the police department that were driving east on Dodge Street approaching Thirty-fifth Avenue at 3:41 a. m. on October 3, 1954. The traffic signal was then green for east and west traffic on Dodge Street. They saw a 1949 Ford automobile with a maroon body and cream top operated from south to north run the red traffic light at a very high speed at the intersection of Thirty-fifth Avenue and Dodge Street. The police officers pursued the Ford north on Thirty-fifth Avenue. The lights on their car, including the headlights, a spot light, and a red light, were operating. The Ford and its occupants attempted to elude the police car. The Ford was in view of the police at all times from where it was first seen by them until it was stopped and the three men in it were placed under arrest. The chase proceeded from Thirty-fifth Avenue and Dodge Street by various routes, many turns, and much back tracking for a considerable time and to Fortieth and Seward Streets where the Ford was stopped and the arrests were made.

The driver of the Ford was Donald Hendrickson. The defendant, Charles R. Larson, was in the rear seat at the right and a Mr. Raven was in the rear seat at the left. About the time the Ford was stopped by the police they saw the men in the back seat stuffing something down behind it or the cushion of the seat. The police asked the men in the Ford what it was and they would not tell. One of the officers pulled the seat forward and found two fur stoles behind the rear seat. Later a skirt was found hidden in the back seat of the Ford. One of the officers asked the men where they got the furs and one of them said in the presence of the other two that he did not know. The three of them were arrested and taken to the headquarters of the police department.

The furs recovered by the police were identified as the silver-blue mink scarf and the ranch mink scarf that were in the display window to the east of the door in the Crandell store when it was closed the night before.

The tags containing the name, address, and stock number of the store, fastened to the furs with metal seals which locked the tags to the furs, were on them when they were recovered. There was on each seal "Crandell Furs, Omaha." The skirt found in the Ford was identified as the one that was on the manikin in the display window of the store under the silver-blue mink paw coat. The coat was missing from the store after the window was broken and it has not been found. The manikin on which the coat was displayed was found on the sidewalk in front of Harkerts restaurant.

The defendant offered no evidence at the trial. He relied upon his plea of not guilty. The conviction of defendant depends upon circumstantial evidence. In determining the sufficiency of circumstantial evidence to sustain a conviction, each case must be decided on its own peculiar circumstances. To justify a conviction on such evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together, must be of such character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any reasonable hypothesis of innocence. Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539. The undisputed proof in this case justifies a finding of these requirements.

There is no direct proof that defendant broke into or entered the building described in the information for any purpose. Such proof is not necessary. There is evidence tending to establish he aided and abetted others to break into and enter the building in which the store was conducted with intent to steal property of value contained therein. This is sufficient. Burnell v. State, 159 Neb. 349, 66 N. W. 2d 838.

The guilt or innocence of the defendant of the charge made against him was under the circumstances of this case a matter for the jury to decide. The court was

correct in submitting this issue to the jury and instructions Nos. 4 and 5 to which the defendant objects are without fault. It was a question of fact. The credibility of the witnesses and the weight of the evidence were for the jury to consider and determine and its conclusion may not be disturbed by this court unless clearly wrong. Burnell v. State, *supra*. It cannot be said that the verdict in this case was clearly wrong.

The sentence and judgment of the district court should be and they are affirmed.

AFFIRMED.