ELIZABETH BROWN HOGOBOOM V. STATE OF NEBRASKA.

FILED JANUARY 7, 1931.   No. 27365.

*Prince & Prince* and *Kenneth Williams,* for plaintiff in error.

*C. A. Sorensen, Attorney General, L. Ross Newkirk* and *Lee Basye, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Thompson and Eberly, JJ., and Leslie, District Judge.

Eberly, J.

The defendant, Elizabeth Brown Hogoboom, formerly Elizabeth E. Brown, was tried in the district court for Frontier county upon an information first filed in that court on the 6th day of December, 1929, charging: "That Elizabeth Brown Hogoboom * * * in the county of Frontier, and the state, aforesaid, * * * then and there being an officer of an incorporated company, to wit, assistant cashier of the Frontier County Bank * * * and * * * not being an apprentice or person within the age of 18 years, did then and there beginning on or about the 1st day of January, 1925, and continuously thereafter until, and including, the 19th day of April, 1928, by a series of acts during the same employment, wilfully and unlawfully, feloniously, fraudulently and continuously without the assent of her employer, embezzle the sum of $34,870.80 in money of the value of $34,870.80, * * * which money came into the possession and care of said Elizabeth Brown Hogoboom by virtue of and under color of her office as assistant cashier of said corporation, with the intent of her the said Elizabeth Brown Hogoboom to defraud the owner out of the value of the same." The trial resulted in the following verdict: "We, the jury, * * * do find the defendant Elizabeth Brown Hogoboom, formerly Elizabeth E. Brown, guilty as charged in the information; and we further find the amount and value of the property embezzled to be the sum of $1,650."

The record discloses that the plaintiff in error at every stage of the proceeding challenged the sufficiency of the information, the sufficiency of the evidence presented to sustain the information and to warrant the conviction, the sufficiency of the verdict to support the sentence imposed, and also alleges errors in the introduction of evidence specifically set forth in her brief.

The state in this case predicates the information, above set forth, upon and seeks to sustain the same under the

provisions of section 9629, Comp. St. 1922, as amended by chapter 95, Laws 1923. The amendment last referred to was an act entitled: "An act to amend section 9629, Compiled Statutes of Nebraska for 1922, relating to embezzlement, and to repeal said original section." And by its terms added to section 9629, Comp. St. 1922, as theretofore existing the words: "If money or property is so embezzled or converted by a series of acts during the same employment, the total amount of money and the total value of the property so embezzled or converted shall be considered as embezzled or converted in one act."

The defendant challenges the right of the state to charge the offense in the form of continuando, in view of the provisions of the Criminal Code that "No person or persons shall be prosecuted for any felony * * * unless the indictment for the same shall be found by a grand jury, within three years next after the offense shall have been done or committed." Comp. St. 1922, sec. 9931.

It is to be remembered in this connection that the generally accepted rule is that statutes of limitation as applied to criminal procedure need not be pleaded, but may be taken advantage of on the general issue. 1 Wharton, Criminal Procedure (10th ed.) 416, sec. 368. So, too, the construction of this statute is liberal to the defendant, for "Here the state is the grantor, surrendering by act of grace its rights to prosecute, and declaring the offense to be no longer the subject of prosecution. The statute is not a statute of process, to be scantily and grudgingly applied, but an amnesty, declaring that after a certain time oblivion shall be cast over the offense; that the offender shall be at liberty to return to his country, and resume his immunities as a citizen; and that from henceforth he may cease to preserve the proofs of his innocence, for the proofs of his guilt are blotted out. Hence it is that statutes of limitation are to be liberally construed in favor of the defendant, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition and notification by the legislature of the fact that time, while it gradually

wears out proofs of innocence, has assigned to it fixed and positive periods in which it destroys proofs of guilt." 1 Wharton, Criminal Procedure (10th ed.) 415, sec. 367.

In reply to this position the state, in effect, concedes that the statute of limitations has obliterated the offense charged so far as it existed prior to the 6th day of December, 1926, but asserts that the information having been filed on the 6th day of December, 1929, all embezzlements committed since three years prior thereto are properly contained within the terms of the information, and that as to the interval of time between the 1st day of January, 1925, set forth in the information as the commencement of a continuous offense, and the 6th day of December, 1926, being in effect barred by the terms of the statute of limitations, may be treated as surplusage, as time is not of the essence of the offense and therefore the information is good as charging a continuous offense commencing on the 6th day of December, 1926, and culminating on the 19th day of April, 1928. In support of this position the case of *State v. Way*, 5 Neb. 283, is cited. The *Way* case involved a charge of cohabiting in a state of adultery. This court in the opinion say:

"The defendant is charged with the crime from August 10, 1874, until July 15, 1875. According to the import of the words used in the statute, this is a continued offense, and if it should be proved that he wantonly cohabited with the woman in a state of adultery, during any portion of this time, such proof would be sufficient to establish the crime and fix the guilt of the party. We are of the opinion that the continuing offense in this case was properly charged, and the statement of time properly alleged in the indictment.

"The second point made in the argument is not tenable, because no evidence could be received of any acts prior to the passage of the law, as the statutory offense charged did not then exist, and, therefore, as time is not of the essence of the offense charged, the prior time alleged in the indictment may be treated as surplusage, and the indictment, in

its legal effect, be held good as charging the offense from the passage of the law until July 15, 1875."

Is this doctrine announced by our court in *State v. Way, supra,* applicable to the situation here presented? Accepting the *Way* case as controlling as to proper application of the statute of limitations in a case wherein the offense involved is "continuous," and conceding that the information in that case embraced every element essential to the conviction, and the verdict therein established every essential fact necessary to sustain the sentence imposed, do these conclusions obtain in the instant case?

Section 11 of the Bill of Rights provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature and cause of accusation, and to have a copy thereof." Section 9629, Comp. St. 1922, provides, as to the violation of its terms: "Every such person so offending shall be punished in the manner provided by law for feloniously stealing property of the value of the article so embezzled, taken or secreted or of the value of any sum of money payable or due upon any right in action so embezzled." Under the terms of section 9599, Comp. St. 1922, the stealing of money or property of the value of $35 is made a felony to be punished by imprisonment in the penitentiary not more than seven years nor less than one year; but, under the terms of section 9605, Comp. St. 1922, the stealing of any money, goods, or chattels of value less than $35, "Every person so offending shall make restitution to the party injured in two-fold the value of the property stolen or destroyed, and be fined in any sum not exceeding one hundred dollars or shall be imprisoned in the city or village jail subject to such labor on the streets or elsewhere as shall be required by the officer in charge of such jail for any time not exceeding thirty days."

Section 10154, Comp. St. 1922, provides: "When the indictment charges an offense against the property of another by larceny, embezzlement or obtaining under false pretenses, the jury, on conviction, shall ascertain and declare

in their verdict the value of the property stolen, embezzled or falsely obtained."

In order to properly determine the question here presented, it is necessary that the several statutes last referred to be construed together for the purpose of determining the legislative intent. It is quite obvious that by the express terms of the statutes thus construed "the value of the property stolen, embezzled or falsely obtained" constitutes an essential element of the indictment or information charging embezzlement under section 9629, Comp. St. 1922, as well as of the verdict of the jury determining the result of a trial thereunder. Indeed, in absence of such a statute as section 10154, Comp. St. 1922, above quoted, such would be the rule in jurisdictions where the statute relating to embezzlements provides that the punishment shall be regulated by value, as in cases of grand larceny and petit larceny. 12 Standard Encyclopædia of Procedure, 392.

So, too, this court has construed this statute to the effect that the jury shall ascertain and declare in their verdict the value of the property stolen, etc., and requires a definite finding on the part of the trial jury in their verdict, and that an estimate by the jury will not suffice. *McCormick v. State,* 42 Neb. 866; *Hennig v. State,* 102 Neb. 271; *Lee v. State,* 103 Neb. 87. In the *Hennig* case this court not only reaffirmed the rule referred to above, but added: "Upon conviction in such case, the court should look to the verdict for the value of the property to determine the sentence to be imposed."

The statements in the information filed in this case, as already set forth, is a simple charge that, during the time intervening between the 1st day of January, 1925, and the 19th day of April, 1928, there was an embezzlement of $34,870.80 by the defendant, but the defendant in no manner is therein advised as to the amount charged as embezzled between the 6th day of December, 1926, and the 19th day of April, 1928.

Whether it was the intent of the prosecutor to charge the value of $35 or less as the amount embezzled during the period within which the statute of limitations had not run,

the language employed in the information affords not the slightest clue. The jury's verdict in terms that the defendant is "guilty as charged in the information" is in effect a specific finding that between the 1st day of January, 1925, and the 19th day of April, 1928, there was an embezzlement of $1,650. There is, however, no determination of any fact from which it may be inferred that any embezzlement took place from and after the commencement of the 6th day of December, 1926, nor can the verdict, read in connection with the information, afford the slightest clue upon which may be determined the amount, if any, actually embezzled after the 6th day of December, 1926, or whether it amounted to $35 or less. It is manifest that such a verdict is wholly insufficient to sustain a conviction of a felony committed by the defendant within the statute of limitations. There being an essential failure of the prosecution to charge, and on the part of the jury to ascertain and declare in their verdict, the amount of money embezzled between the 6th day of December, 1926, and the 19th day of April, 1928, conviction may not be sustained.

It appears from the record that at the trial of this case an expert was permitted to testify as to his examination of certain books, records, papers and entries. His right to testify was challenged on the ground that no proper foundation for the same had been shown; and that there was no showing that the books and records, the source of the information, were themselves competent evidence. In other words, it was not shown that the books and records were kept in the usual and ordinary manner such as would be essential to a proper foundation for their own introduction in evidence. It is contended that the sole foundation laid by the state was limited to showing that the expert's conclusions were based on an examination of the books and records of the bank which were in the courtroom.

A careful reading of the bill of exceptions discloses that the identification of the source of this expert's opinion was decidedly vague. It appears that certain books and records which were probably made use of by him had been previously properly identified, but this conclusion cannot

be applied to all of the sources from which this expert derived his conclusions taken as an entirety.

The state relies upon the rule announced by this court in *Hankins v. State*, 115 Neb. 350, to sustain the action of the trial court. It is patent that both state and defendant concede the existence of the well-established rule in this jurisdiction, reannounced in this case, that "In a prosecution for embezzlement where the books, records, papers and entries are voluminous and of such a character as to render it difficult for a jury to arrive at a correct conclusion as to amounts, an expert accountant may be allowed to examine them and to testify as to the result of his examination, when such books, records, papers and entries are in the courtroom, subject to inspection by the accused." A careful reading of this opinion, however, discloses that the technical subject of proper foundation for testimony, such as now before us, was also considered in that case and it would seem determined adversely to the contention of the state. The immediate subject for consideration presented by the record in that case was whether a sufficient foundation had been laid for the introduction of the expert's opinion when it was based in part upon a large number of "detail ribbons" which were identified as having been made by the cash register during the course of defendant's employment, as to which the employer testified that they were part of his system of bookkeeping. These "detail ribbons" were not offered in evidence, but were in the courtroom subject to inspection; and a witness, who was an expert bookkeeper and accountant, and who made an audit of the books and accounts, testified that he used the conventional books (naming them) and the cash register ribbons, take-off sheets, and all other records in connection with the business. The defendant claimed that the general rule was departed from in the admission of expert testimony as to what was shown by the detail ribbons, because, he asserts, they were not made by the defendant. In discussing this contention, Goss, C. J., delivering the opinion of the court, says in part: "Defendant does not quarrel with the general rule, but his brief strenuously urges that the evidence

of the auditor was erroneously received on the ground that detail ribbons are hearsay. He asserts they are hearsay, because no single witness, testifying to a single item, says of it that it correctly records a single transaction, or, testifying of a single ribbon, says that he operated the cash register which made the figures on that ribbon. That argument might have efficacy if it applied to a stranger to the ribbons. But the defendant is not such. The cash register was under his dominion. It was a part of the paraphernalia of his office as bookkeeper. * * * We hold that, in the prosecution of a bookkeeper for embezzlement, records for the inspection and keeping of which he was responsible, and which went through his hands in the course of his duties, are admissible against him, though not actually made by him. The evidence on this phase of the case was properly submitted to the jury on the authority of the cases heretofore cited."

In other words, this court in the *Hankins* case, *supra*, carefully considered the subject of technical foundation and expressly found that the evidence offered on this subject was sufficient, and from the discussion contained in the opinion it may be fairly implied that, when expert evidence of the character here challenged is offered, as a prerequisite to its admission, it must fairly appear that the books and records upon which the testimony of the expert is based were themselves properly identified to such a degree as to entitle them to be admitted in evidence. It follows that the trial court erred in admitting, over objection, this evidence in violation of this principle.

Defendant also complains of the admission in evidence by the trial court, over objections, of certain carbon copies of letters purporting to have been written by witnesses and mailed to defendant in reply to defendant's letters. No notice to produce the originals of the copies introduced in evidence by the state has been served on the defendant, nor does it appear that such originals have been lost or destroyed. Defendant contends that the carbon copies were secondary evidence of the originals, and as such were

not admissible in evidence under the foundation contained in the record.

The state, as its sole authority to sustain the action of the trial judge, relies upon *LeMaster v. People,* 54 Colo. 416. The language employed by Justice Hill, who speaks for the Colorado court, as far as it relates to the question under consideration, is: "Complaint is made to the admission in evidence of carbon copies of letters written by witnesses in reply to those received from the defendant's company, either written or dictated by him. Upon his objections to the copies the defendant was requested to produce the originals; he stated his inability to do so and from his counsel's statements it appears that the allowance of time after the request was made would have been of no assistance in this respect. The witnesses testified that the carbon copies were made at the same time and that the originals were properly mailed, etc. Under these circumstances we think the copies were properly admitted."

On the other hand, the rule announced by this court, here applicable, is: "Ordinarily, to justify the reception of a copy of a private writing in evidence, it must appear that it is a true copy of some writing, admissible in evidence, which has been lost or destroyed, or which is in the possession of the adverse party, who refuses to produce it on due notice." *Peycke v. Shinn,* 68 Neb. 343. This court also by fair implication has approved this statement of the rule as applicable to a criminal case. *Knights v. State,* 58 Neb. 225. However, a careful analysis and comparison of the Colorado case with *Peycke v. Shinn, supra,* induces the belief that there is no real conflict between them. Justice Hill, in the *LeMaster* case, does not announce the doctrine that "carbon copies" are primary evidence. His argument, as an entirety in view of the facts recited, tends rather to the conclusion that the facts he enumerates are rather regarded as a sufficient foundation to justify the admission of the carbon copies as secondary evidence in the true sense of that term. If we are correct in this conclusion, we can have no quarrel with the principle of evidence upon which the Colorado case pro-

ceeds. It is to be remembered that all rules of evidence are adopted for practical purposes in the administration of justice and must be so applied as to promote the ends for which they were designed. In *Whitney v. State,* 53 Neb. 287, this court say: "The accused, while on the witness stand, denied the existence of such a deposit slip and of all knowledge thereof. This laid sufficient foundation for the admission of parol proof of the contents of the paper." So, also, Judge Rose, in *Nebraska State Bank v. Walker,* 111 Neb. 203, said: "When all the proofs applicable to the carbon copies are considered, it is sufficiently shown that the originals were not obtainable upon demands duly made therefor and that there was no error in admitting the copies as secondary evidence." In view of the facts appearing in the Colorado case cited, it is quite evident that the doctrine announced therein in no manner conflicts with the determination of this court announced in *Peycke v. Shinn, supra.* At all events, it must be conceded that this court is fully committed to the doctrine that carbon copies, especially when not intended for use as duplicates or executed in contrapart, must be deemed secondary, not primary, evidence. *Reasoner v. Yates,* 90 Neb. 757; *Sheridan Coal Co. v. Hull Co.,* 87 Neb. 117; *City of South Omaha v. Wrzesinski,* 66 Neb. 790. It is true, nevertheless, that the contentions of the state as to the admissibility of carbon copies of letters as presented in the instant case find support in some modern cases. But the early authorities were almost in a unit to the contrary, and it must be conceded that the more modern authorities are divided on the point under consideration. Some, as suggested, support the contention that carbon copies of letters are to be deemed primary or the legal equivalent of primary evidence rather than secondary. Where this conclusion prevails, such carbon copies would, of course, be properly introducible in evidence without the necessity of first accounting for the nonproduction of the original writing. This view obviates the serving of notice to produce even where the loss or destruction of the original is not disclosed by the evidence. It is based in part at least on the

proposition that carbon copies of letters being made at the same time and with identical strokes that produce the originals are unquestionably correct and accurate to a degree that entitles them to consideration as the equivalent of the originals actually signed and mailed. With due deference to these eminent authorities who have so held, we are unconvinced that in principle the distinction of carbon copies of letters, letter-press copies and the like is warranted. It must be admitted that carbon copies are, not infrequently, wholly or in part, at least, illegible and therefore inaccurate. So, also, it must be admitted as to typewritten letters dispatched in the ordinary course of business, possession and control of, or at least access to, the typewriting machine on which the work was done ordinarily remains with the sender of the letters. Under these circumstances, the corrupt substitution of retained carbon copies by "other copies" made at a later date and corruptly changed to comply with the exigencies then facing the original sender would afford the easiest and safest means of accomplishing a fraudulent or criminal alteration of evidence. Indeed, such substitution, though made months subsequent to the actual dates of letters of which they purport to be copies, yet being the products of the machine by which the originals were in fact written, would on their face, to a large degree, in defects of type, of alignment, of lateral and vertical spacing, and indeed in every element which gives to typewriting individuality, bear "unmistakable" and "convincing" evidence of "genuineness." Osborn, Questioned Documents, 581-608. There would indeed under such circumstances be no evidence of alterations within the four corners of each of such purported copies. Each would appear, as in the present case, to be separate, individual, and physically detached, and unrelated copies of original instruments. There would be no related and continuous course of correspondence such as was ordinarily presented by the old time letter-press copy books. From this aspect we find no reason why, on principle, a distinction should obtain by reason of the fact that the carbon copies are presumably made by the same

movement of the writing implement. 2 Jones, Evidence (2d ed.) 1467, sec. 798. Indeed, other considerations appeal strongly for the adherence to the present Nebraska rule, especially as applied to criminal cases. It was well said by Henderson, C. J., almost a century ago: "The object of the notice (to produce) is not *to compel* the party to produce the paper; for no such power is assumed, either directly or indirectly, by placing him under a disadvantage if he does not produce it. Its object is, to enable the prisoner to protect himself against the falsity of the secondary evidence, which the law presumes may be false, as its very name imports. The copyist may make a mistake in transcribing; *he may be corrupt; so may the witnesses who give evidence of the contents.* It is but reasonable, therefore, that the accused should have an opportunity of correcting a falsity in the evidence, if one should exist. Notice is given for that purpose, and that alone; and whatever may be its form in common practice, it is, in substance, a notification that the secondary evidence will be offered." (Italics ours.) *State v. Kimbrough,* 2 Dev. (N. Car.) 431. The conclusion is therefore that in the instant case the usual rule of evidence applicable to secondary evidence is controlling, and that the trial court in receiving in evidence the carbon copies of the letters under the facts in this record, disclosing neither the loss nor destruction of the originals, and also the absence of any notice to produce, erred in so doing.

And, lastly, there is necessarily involved in the case presented here the following: As heretofore stated the information in this case was laid under the general embezzlement statute which appears as section 9629, Comp. St. 1922. In effect this section provides the maximum penalty, on conviction of the crime defined therein, of seven years. Section 9638, Comp. St. 1922, is limited to the subject of embezzlement and frauds by bank officers and provides a maximum penalty for the commission of embezzlement by such of ten years. These sections were first enacted as sections 121 and 135 of an act entitled "An act to establish a Criminal Code," and approved in

1873. In 1921, under the title "An act to amend sections 4, 7, 11, 22 and 51 of article 16, title 5, in chapter 190 of the session laws of Nebraska for 1919, relating to that part of the Civil Administrative Code concerning banks, banking and the word 'bank,' to provide additional sections to said article, to provide a penalty for violation of the act, to declare an emergency and to repeal said original sections," there was enacted: "Section 6. Every president, director, cashier, teller, clerk, officer or agent of any bank who embezzles, abstracts or wilfully misapplies any of the moneys, funds, securities or credits of the bank, or who, with intent to defraud * * * draws any draft or bill of exchange, * * * upon conviction thereof shall be fined not more than five thousand dollars and be imprisoned not more than ten years." Laws 1921, ch. 297. This provision now appears as section 8047, Comp. St. 1922. The law of 1921 in terms does not purport to repeal or in any manner amend the original sections 121 and 135 of the Code of 1873, which, subsequently amended, now appear as sections 9629 and 9638, Comp. St. 1922. A cursory reading of the 1921 act as an entirety might indicate its purpose as limited to providing a penalty for the violation of the Nebraska act providing for the organization and regulation of Nebraska state banks. It is also apparently an act complete within itself, and, so construed, evidences a legislative purpose to create an independent substantive crime as possibly applicable to officers and employees of state banks only and to provide an exclusive penalty therefor.

A situation somewhat similar in principle has heretofore been before this court. Prior to 1907 we had a general statute on the subject of larceny, which now appears as section 9599, Comp. St. 1922. Subsequently, independent acts were passed by the legislature defining and punishing hog stealing and cattle stealing as felonies, without regard to the value of the property stolen. This court held that the subsequent passage of the acts last referred to, in effect, eliminated the offenses of hog stealing and cattle stealing from the provisions of sections 114 and 119 of

the Penal Code (now carried as sections 9599 and 9605, Comp. St. 1922) under which the crimes last referred to were formerly punishable, and to compel the state to prosecute, if at all, under the provisions of the new acts. *Wallace v. State,* 91 Neb. 158; *Griffith v. State,* 94 Neb. 55. In view of the pronouncements of this court thus made, attention is invited to sections 8047, 9629, as amended, and 9638, Comp. St. 1922, and a comparison of their provisions suggested, especially in light of the fact that prior to the enactment of section 8047 the records of this court indicate that embezzlements by bank officers and employees were ordinarily prosecuted under the provisions of section 9638. Are the principles announced in the cases last above cited controlling and applicable in the disposition of the instant case? In view of the situation, we therefore do not determine the sufficiency of the evidence in the present bill of exceptions to sustain the information.

For the reasons heretofore stated, the judgment is reversed and the cause remanded.

REVERSED.