## YOUNG v STATE

Ohio Appeals, 4th Dist, Scioto Co

Decided March 26, 1932

Frank W. Moulton, Portsmouth, for plaintiff in error.

Cameron Meacham, Prosecuting Attorney, Portsmouth, J. Julian Snyder, Assistant Prosecuting Attorney, Portsmouth, and William J. Meyer, special counsel, Portsmouth, for defendant in error.

BLOSSER, J.

The indictment was returned and filed July 24, 1931. Later a bill of particulars was filed by the state which recited more of the details of the alleged embezzlement. Counsel for the defendant have raised many questions, all of which have been considered by the court. Those which are material will be discussed.

It is urged that there was misconduct on the part of a juror, Alice Adams, and also on the part of state's witnesses Charlotte Bannon and Arthur H. Bannon, the president of the finance company. The court admonished the jury that during any recess while the case was in progress or during any adjournment the jurors should be careful not to have any conversation with any person or persons on the subject of the trial, and to be very careful not to talk to any of the interested parties or their families or to any one who purported to be a witness or to any of the attorneys in the case on any subject. It is claimed that Alice Adams when examined as to her qualifications to serve on the jury was asked if she was acquainted with Miss Bannon, Arthur H. Bannon and some of the other directors of the corporation, and she stated she was not. During the progress of the trial she was seen talking to Miss Bannon and to Arthur H. Bannon. On the hearing of the motion for a new trial Alice Adams testified and stated the exact substance of her conversations with the witnesses mentioned. It did not concern any phase of the trial or any of the parties connected with it. She stated that at that time she did not know that Miss Bannon was to be a witness in the case but that she had been acquainted with her for many years. The plaintiff in error contends that when Alice Adams was examined as to her qualifications to sit as a juror had she stated that she was acquainted with Miss Bannon she would not have been accepted as a juror. The defendant can not avail himself of this for the reason that the questions and the answers that were given by Alice Adams at the time the jury was impanelled are not embodied in the bill of exceptions and there is nothing in the record to show what the questions and answers were. Conversations by parties interested in the suit with jurors during the progress of the trial upon any subject connected with the suit are to be most strongly condemned, and if it appeared in this case that there was any prejudice whatever to the defendant the court would not treat the matter lightly. But as nothing prejudicial to the defendant was shown we are of the opinion that this ground of error is not well taken.

It is admitted in this case that the defendant was an officer and the manager of the corporation and in charge of its affairs. In testifying in his own behalf he stated these facts and said that he was authorized to make all loans. The theory of the state was that the alleged illegal withdrawals of money from the funds of the corporation by the defendant were part of a system of alleged loans which he made by placing his note in the files of the company and at the same time withdrawing a certain amount of cash by means of checks made payable to cash. Loan cards and files were supposed to be kept of each transaction. The transactions were practically

alike and covered a period of years. As part of its case the state offered in evidence the notes, checks and papers. The files and papers in each transaction were offered in evidence and marked alphabetically as exhibits. There were seven of these transactions: A, B, C, D, E. F, and G. The total of these notes is $46,948, the amount stated in the indictment.

The court withdrew from the jury all of the evidence with reference to exhibits A, B and C except as it might bear on the matter of intent or purpose of the defendant. These exhibits were with reference to transactions occurring more than three years prior to the time charged in the indictment. The court admitted the evidence of the transactions with reference to exhibits D, E, F and G, which occurred within the three year period. The total amount involved as shown by exhibits D, E, F and G was $22,090. It has been urged that it was not proper to admit evidence of the various transactions at different times because the indictment alleged a date certain. This, however, is permissible.

"The allegations of time in an indictment for embezzlement are governed by the rules governing such allegations in indictments generally."
15 Ohio Jur., page 646.

In this case time was not of the essence of the offense and it was not necessary to prove the crime to have occurred at the exact time stated in the indictment, but it was sufficient to prove it at any time if it occurred before the finding of the indictment. 31 C. J. page 681, 684; 14 R. C. L. page 179. The three year limitation in §12467 GC is not to be regarded as a statute of limitations for the prosecution and punishment of the offense of embezzlement ,but is merely for the purpose of authorizing the addition of various small peculations or embezzlements if within three years and under one continuous employment so as to make a felony instead of a misdemeanor. Shelley v State, 19 O. C. C. (n.s.) 164. The dates of the various transactions in this case are not seriously in dispute. The defendant did not deny the time of the transactions nor did he deny the notes and checks. He claimed that they represented loans to himself which he was authorized to make, that he did not convert the money to his own use and that there was no criminal intent.

It is elementary that an agent can not act against the interests of his principal, and the principle forbidding an agent to place himself in a position antagonistic to his principal absolutely precludes the agent from dealing with himself either directly or indirectly. 1 Ohio Jur. 761, 772. Our Supreme Court held in the case of Insurance Co. v Hervey, 72 Oh St 174, that an agent can not act for himself and his principal in the same transaction. Neither can a director or cashier of a bank authorize a loan to himself. 5 Ohio Jur. 484; Blair v First National Bank, 4 O.F.D. 476, 482; 1 Morse on Banks and Banking, §125.

In this case the defendant as manager of the finance company could not authorize a loan to himself. This was so even if the transaction was made with the knowledge of the president of the corporation, because in such case it would result in injury to the corporation and a fraud on the remaining stockholders.

It is urged by the defendant that the court erred in admitting evidence with reference to the transactions shown in exhibits A, B and C. It was the theory of the state that the defendant had a certain scheme or system by which he obtained the money from the finance company and it offered evidence of the transactions for the purpose of showing the intent of the defendant. This was permissible by virtue of §13444-19 GC. The evidence with reference to exhibits A, B and C was offered before the introduction of the evidence with reference to exhibits D, E, F and G, and the defendant claims this was error. §13442-8 GC provides for the order of proceedings in a criminal case. This section gives the trial court authority to deviate from the stated order of proceeding when in its discretion it is deemed proper.

The record discloses that at the conclusion of the state's evidence the court instructed the jury that it could only consider the evidence with reference to exhibits A, B and C for the purpose of determining the question of intent to defraud and that it could not consider this evidence or any part of it for any other purpose whatever. The court limited the purpose. of this evidence before the issues were submitted to the jury. The court in its general charge again stated that the evidence with reference to these exhibits could only be considered as reflecting and determining the criminal intent and for no other purpose. It is contended that it was the duty of the court to instruct the jury as to the purpose for which this evidence was admitted at the time it was offered; that by reason of the evidence having been offered early in the trial and remaining with the jurors during most of the trial it was prejudicial to the defendant.

The case of **Baxter v State, 91 Oh St 167,** is cited as authority for this proposition. The weight to be given to the Baxter case as authority, however, is weakened because it was partly verruled in the case of **Scott v State, 107 Oh St 500.** We do not think that the rule laid down in the Baxter case is applicable here. The peculations of the defendant consisted of a series of transactions covering a period of years. They constituted in legal effect but one offense. There was no request at the time by the defendant that the evidence be so limited, and as no such request was made by the defendant he can not now complain in this proceeding in error. **Patterson v State, 96 Oh St 90.**

In some jurisdictions it is held that in the prosecution of an embezzlement by an agent when the agent has once converted the property of his principal to the agent's use the offense is complete and that subsequent similar conversions constitute separate offenses. Our Supreme Court in the case of **Brown v State, 18 Oh St 497,** in construing the statute upon embezzlement of public money, takes a broader view. The last paragraph of the syllabus is as follows:

"Proof of a continuous series of conversions of money by an officer to the use of another, in pursuance of a conspiracy between them, will support a verdict of the jury finding the aggregate sum as the amount of a single embezzlement."

In the case of **Campbell v State, 35 Oh St 70,** the Supreme Court held:

"Upon a trial under an indictment containing a single count, charging the defendant with the embezzlement of moneys, where it appears that the moneys were the proceeds of several notes placed in his hands by his employer at different times, and collected by him from different persons at different times, such facts alone do not constitute a ground for requiring the prosecutor to elect upon which of the sums so collected the state will rely for conviction."

The theory upon which the court acted evidently was that the agent might have received the money of his principal without actually converting it to his own use at the time he so received it; that the embezzlement was not fully consummated until after he had received the last installment of his several peculations. Under this theory it was the duty of the defendant at the time laid in the indictment not only to have accounted for the proceeds of the last note given by him but for the proceeds of all of the notes theretofore given by him, and when he failed to do so he was guilty of embezzling in one offense all of the several items that had theretofore been converted to his use. If supported by the evidence the defendant under this theory not only might have been convicted for the $22,090 taken by him within the three years prior to the indictment but for the whole amount charged in the indictment covering a much longer period. In the case of **State v Mook, 40 Oh St 588,** the Supreme Court held that under such an allegation the state may prove the aggregate value of the property or the separate value in each peculation. The case of State v Moyer (W. Va.), 52 SE 31, adopts the view of the Ohio courts.

The state was not called upon to elect upon what transactions it would rely for a conviction until all of its evidence was presented. **Gravatt v State, 25 Oh St 162;** Campbell v State, supra; State v Moyer, supra.

All of the rights of the defendant were protected when at the close of the state's evidence and in its general charge the court limited the transactions with reference to exhibits A, B and C to the sole purpose of reflecting on the intent of the defendant. The court's directions in this regard were followed by the jury in its deliberations. The jury in its verdict found that the aggregate amount embezzled was $22,090. This is the exact amount involved in exhibits D, E, F and G. The record shows that the jury fully understood and followed the instructions of the court with reference to this evidence and the purpose for which it was admitted, and there was no prejudice to the defendant in its admission. Chicko v State, 24 O.C.C. (n.s.) 579.

It is urged that the court erred in stating the elements necessary to constitute the crime of embezzlement. Isolated statements of the court can not be taken alone. The charge must be construed as a whole. When taken as a whole the charge states the law correctly.

It is urged that the admission of certain records of the finance company, such as the journal and ledger, was erroneous. While it was not shown that the entries in these books were made by the defendant in person yet the evidence shows that the business of the finance company was operated under his supervision and direction. This evidence was admissible for the purpose of showing and explaining the system and manner in which the business of the finance company was transacted. The defendant

was in no way prejudiced by the admission of these records, especially in view of the fact that there was no serious controversy as to the manner of bookkeeping or system of accounts used by the finance company.

The defendant also claims that there was no showing or evidence to the effect that the money in question came into his possession by reason of his employment. It is claimed that it is necessary that he should have received the money from third persons on behalf of the corporation and then converted it to his own use with intent to defraud. This contention is not sound. As already stated, the defendant was in charge of the business of the corporation. It was not necessary for him to have exclusive control of the money of the finance company. If he together with others had control of its funds and by virtue of his office he exercised control over its property and funds that would be sufficient. United States v Harper, 33 Fed. 471.

It is claimed by the defendant that the money represented in the exhibits and the amount returned in the verdict embraced some interest. Without going into unnecessary detail it is admitted that the transactions covered by the exhibits also embraced money withdrawn by means of checks. On cross examination the defendant admitted certain of these transactions. His claim was that they were legitimate loans authorized by him, and that the money was withdrawn for the purpose of placing it in some of the other affiliated companies in which he was interested with the knowledge of the president of the finance company. This contention of the defendant was not corroborated by other witnesses and was not believed by the jury. The jury evidently believed the evidence of the witnesses for the state who testified that the defendant concealed his withdrawals and peculations from the directors of the company, and that the transactions were fraudulent and that he converted the money to his personal use. It was in evidence that before an audit of the company's affairs the defendant removed and secreted the papers and records of his transactions for the purpose of preventing the officers of the company from gaining knowledge of his so-called loans. This evidence was persuasive with the jury when it considered the matter of intent. The means employed by the defendant in accomplishing his acts were not material if the intent to embezzle was present.

"The giving of a note for money received from another, if a mere incident in the carrying out of a fraudulent scheme, does not render the relation of the parties one of creditor and debtor, rather than of principal and agent or bailor and bailee, so as to preclude a conviction for embezzlement or for larceny by bailee in case he failed to return the money."

Stecher v State (Wis.), 70, A.L.R. 203.

We are not able to say that the jury was not justified in its conclusion. There was abundant evidence offered to support the theory of the state, and if the jury after hearing all of the evidence believed the state's witnesses instead of the defendant we are not prepared to say, that the jury was wrong. The evidence offered on behalf of the state shows that the major portion of the $22,090 was money withdrawn by the defendant from the funds of the company. It is immaterial so far as the guilt or innocence of the defendant is concerned whether the verdict of the jury was mathematically correct or not so long as the evidence showed the amount embezzled was more than thirty five dollars.

The jury would have been warranted in returning a verdict of guilty with reference to the transaction concerning the note for $9,000, and in finding that the defendant in attempting to explain the same did not give a satisfactory account of the $311.76 in cash which he admitted was withdrawn. The jury was justified in any event in finding the amount embezzled to be more than $35, and if it was more than that sum the crime was a felony and the amount of the embezzlement could have no effect on the punishment to be inflicted. If any error was committed by the jury in fixing the amount embezzled it could not prejudice the rights of the defendant nor in any way affect the punishment. Meadowcroft v People (Ill.), 45 NE 991, 999; 9 R.C.L., 1299; United States v Harper, 33 Fed. 471.

After a consideration of the whole record in this case it is our conclusion that no prejudicial error was committed and that the defendant had a fair trial.

Judgment affirmed.

MAUCK, PJ, concurs.

MIDDLETON, J, concurs in judgment.