ELMER HOFFMAN, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

83 N. W. 2d 357

Filed May 24, 1957. No. 34120.

*Merril R. Reller* and *John McArthur,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

In this case the State prosecuted the plaintiff in error, Elmer Hoffman, hereinafter referred to as the defendant, on a charge of embezzlement under section 28-538, R. R. S. 1943. The jury returned a verdict of guilty and the trial court sentenced the defendant to serve a term of not less than 2 years nor more than 3 years in the State Reformatory for Men. The defendant brings the case to this court for review.

The substance of the complaint filed against the defendant was "that Elmer Hoffman, in the County of Saline and State of Nebraska, there being an agent of the Farmers Elevator Company, a corporation, of Wilber, Saline County, Nebraska, to-wit: manager of the said Farmers Elevator Company's gasoline and oil station, and not being an apprentice nor a person within the age of eighteen years, did then and there, beginning on or about the 1st day of January, 1954, and continuously thereafter until, and including the 15th day of June, 1955, by a series of acts during the same employment; wilfully and unlawfully, feloniously, fraudulently and continuously, without the consent of his employer, embezzle certain personal property, to-wit: 57,000 gallons of gasoline, the same being the property of the said Farmers Elevator Company, of the value of $11,400.00, which gasoline came into the possession and care of the said Elmer Hoffman by virtue of and under color of his employment as manager of the aforesaid Farmers Elevator Company's gasoline and oil station, with the intent of him, the said Elmer Hoffman, to defraud the Farmers Elevator Company, a corporation, of the value of the same, * * *."

The defendant complains of the action of the district court in overruling his plea in abatement. The basis of the plea was that the evidence was insufficient to show that an offense was committed or that the defendant probably committed it. When the sufficiency of a preliminary hearing is called in question by a plea in

abatement, "the only question to be considered is with reference to the powers of the magistrate which are called into action in the determination of what shall be the result of such hearing. If he is compelled to act judicially, and to determine as a judicial question the matters over which he has jurisdiction, and does determine such questions upon competent evidence, then an error in judgment as to the result reached can not be determined by a plea in abatement. It is only where there is in fact no preliminary examination, either in form or substance, that advantage can be taken of by such a plea." Jahnke v. State, 68 Neb. 154, 94 N. W. 158.

"It is the rule in this jurisdiction that the sufficiency of the evidence adduced at a preliminary examination to hold an accused to answer for a crime with which he has been charged may be raised and tried in habeas corpus proceedings." Birdsley v. Kelley, 159 Neb. 74, 65 N. W. 2d 328. See, also, State ex rel. Flippin v. Sievers, 102 Neb. 611, 168 N. W. 99; Jahnke v. State, supra. The evidence shows that a preliminary hearing was held in which evidence was taken and submitted. The evidence was clearly sufficient to invoke the judgment of the court on a matter over which it had jurisdiction. This constitutes a preliminary hearing sufficient to defeat an attack upon it by plea in abatement. The trial court correctly overruled the plea.

A motion to quash the information on the same grounds as were advanced in the plea in abatement was also made. They afford no grounds for a motion to quash the information and the trial court properly overruled it.

The case was tried to a jury in the district court for Saline County. The evidence adduced at the trial is sufficient to sustain the following findings of fact. The Farmers Elevator Company is a corporation and the defendant was the manager of its gasoline and oil station at Wilber, Nebraska, from January 1, 1954, to June

15, 1955, the period in which the embezzlement is alleged to have occurred. Defendant had been the manager of the station since 1943 and at the time of the trial was about 38 years of age. As manager of the station it was the duty of the defendant to make purchases, pay bills for fuels, oils, and accessories, and keep the books and records of the company, including the making and recording of inventories. On June 15 and 16, 1955, the company caused an audit to be made of the books and records of the gasoline and oil station. It was determined that between January 1, 1955, and June 15, 1955, there was a shortage of gasoline in the amount of 20,847 gallons. During this period the daily sales of gasoline were overfooted an even 100 gallons per day on so many days that it could be described as a common practice. A subsequent audit commencing with January 1, 1954, was made which revealed a shortage of 55,893 gallons of gasoline, the value of which was between 20 and 23 cents per gallon, depending upon the grade of the gasoline. The auditors appeared and testified as to their findings, all of the books of the station which they examined being in the courtroom subject to examination by the defendant, in accordance with the rule announced in Hogoboom v. State, 120 Neb. 525, 234 N. W. 422, 79 A. L. R. 1171. The evidence shows also that the Farmers Elevator Company, by its president, secretary, and attorney, made a formal demand upon the defendant at his home in Lincoln, Nebraska, on August 8, 1955, to refund approximately 57,000 gallons of gasoline which came into his possession and was unaccounted for. There was no compliance with the demand. There was evidence that the corporation through its officers did not consent to the appropriation of any gasoline by the defendant.

There is evidence in the record that defendant falsified three inventories made by him and recorded in the inventory record to conceal the existing shortages. The record shows also that defendant overfooted his

accounts receivable in excess of $2,800. When the audit was commenced defendant falsely informed the auditor that there were no unrecorded liabilities, when in fact there were liabilities outstanding in the amount of $5,001.85. The invoices making up this amount were recent and would not necessarily be entered on the books of the company in the usual course of business at the time the inquiry was made. It was the false statement and not the failure to enter them on the books of the company that appears to be material here. The evidence shows that records made by an assistant while defendant was on vacation were completely changed by the defendant on his return. The evidence shows further that defendant did not at any time report any shortage of gasoline to the officers or directors of the corporation. The record shows that the defendant did not take the stand nor produce any other evidence.

There is evidence that two carloads of gasoline of 5,085 gallons each were charged to kerosene and distillate. The evidence is that the 10,170 gallons of gasoline was received and, though charged as other products, it was in no way accounted for. It was clearly gasoline which came into the possession of defendant and for which he should account.

It is the contention of the defendant that the conviction cannot stand for the reason that the evidence does not show that defendant fraudulently and feloniously converted any gasoline to his own use. In this respect we point out that in 1915 the Legislature amended what is now section 28-538, R. R. S. 1943. The amendment as it now appears in part provided: "The failure, neglect or refusal of such officer, attorney at law, agent, clerk, servant, factor or commission agent, as hereinbefore in this section enumerated to pay, deliver or refund to the proper person, company or copartnership such money, goods or property, entrusted to his or her care or which shall come into his or her possession, upon demand, shall be prima facie proof of in-

tent to embezzle." Under this statute, when other elements of the crime of embezzlement have been established, it is not necessary to offer other evidence of intent to embezzle where a proper demand has been made. The statute creates a prima facie case on the question of intent to embezzle under such circumstances and; in the absence of any evidence on the subject, is sufficient to take the case to the jury. In Bolln v. State, 51 Neb. 581, 71 N. W. 444, a prosecution for embezzlement applicable to public officers in which the statute provided that a refusal to account to a successor in office would constitute prima facie evidence of embezzlement, we said: "To establish embezzlement it did not devolve upon the state to show how or where the moneys were converted by the defendant to his own use. The proof adduced by the state in support of the ninth count is fully as convincing, and is ample to sustain the averments of said count. The state, by uncontradicted testimony, traced the $3,000 of the school money therein mentioned into the hands of the defendant, and he failed and refused to account for the same in any manner whatever." The foregoing case was followed in Whitney v. State, 53 Neb. 287, 73 N. W. 696.

The crime of embezzlement is a statutory crime in this state. The statute, section 28-538, R. R. S. 1943, states at least three ways in which the crime may be committed. For the purposes of the case before it the trial court properly defined the crime of embezzlement in its instructions to the jury as follows: "Embezzlement is the fraudulent appropriation or conversion of another's money or property by a person to whom it has been intrusted or into whose hands it has lawfully come by virtue of his employment, with the felonious intent to defraud or deprive the owner thereof." The contention that conversion to the defendant's use is an essential element of embezzlement cannot be sustained. In the present case the defendant was charged with embezzling certain described property. He was not charged with

the conversion of property to his own use. In Winkelmann v. State, 114 Neb. 1, 205 N. W. 565, this court said: "It may be fairly said that the term 'embezzlement' includes the idea of abstracting and misapplying the funds of another." In the first paragraph of the syllabus, the court summarized its holding as follows: "Where a crime created by statute may be committed by any of several methods set forth in the statute, the information may charge in a single count that it was committed by any or all of the enumerated methods if they are not inconsistent with or repugnant to each other." The trial court's definition of embezzlement was correct. The State was not required to allege or prove that defendant converted the property to his own use. 29 C. J. S., Embezzlement, § 11 b, p. 682. We conclude under the reasoning and holding of the foregoing authorities that a prima facie case of intent to embezzle was made and that it was sufficient to take the case to the jury.

The defendant asserts that the evidence is not sufficient to sustain a finding by the jury of a felonious intent to deprive the Farmers Elevator Company of its gasoline. To sustain the conviction of an agent for embezzling the property of his principal, the facts must warrant the conclusion that such appropriation was made by the agent with a felonious intent. Hamilton v. State, 46 Neb. 284, 64 N. W. 965. It must be borne in mind that the intent with which an act is done is purely a mental process and difficult to establish by direct proof. It is generally a conclusion that must be drawn after a consideration of the actions of the defendant, viewed in the light of all the surrounding circumstances.

The record in this case shows a shortage of 55,893 gallons of gasoline during the period in which the embezzlement was charged. It shows that defendant falsified three inventories, a large number of daily sales records, and the accounts receivable. He falsely informed the company's auditor that there were no un-

recorded liabilities. He admitted that he falsified the inventories and books. He never at any time reported any losses of gasoline to the company or its officers. We think that these facts are such that it is within the province of the jury to determine with what intent the act was done. Buckley v. State, 131 Neb. 752, 269 N. W. 892. We think the falsifying of the records and the misinformation given to the auditor, together with all the circumstances surrounding the case, constitute sufficient evidence to sustain the jury's finding that a felonious intent existed.

The defendant urges that the conviction in the present case was wholly upon circumstantial evidence and that the facts do not exclude every hypothesis other than of guilt. There is ample direct evidence from which the jury could find the defendant to be guilty. The court, however, gave an instruction on the weight to be given to circumstantial evidence to which no exception has been taken by the defendant. The contention that the verdict is based upon speculation and conjecture only cannot be sustained. The falsifying of records day after day and the false statements made to the company's auditor are clear evidences of fraud and a felonious intent. Unexplained, they point towards guilt. Human experience is that an innocent agent does not falsify records and facts to conceal unusual losses from his principal. It is a badge of fraud and evidence of a felonious intent. Such evidence is direct and not circumstantial. It is the usual way of establishing the intent with which an act is done. The jury could well say, as it did, that the acts of the defendant were done with a felonious intent.

The defendant assigns as error the admission in evidence of purported admissions or confessions by the defendant's wife. This assignment is directed to the evidence of Albert Chmelir, the president of the company, who testified that at the time he made demand upon the defendant for the 57,000 gallons of gasoline the de-

fendant's wife said: "Albert, do you want Elmer to pay all when others were involved?" Two other persons accompanying Chmelir testified to the same statement. The record shows that no objection was made to the evidence of any one of these three witnesses. It is fundamental that error may not be predicated on the admission of evidence to which no objection was made. There is no merit in this assignment.

On cross-examination of the auditor employed by the State, counsel for the defendant inquired whether an allowance had been made for shrinkage. The auditor testified that he allowed 1 percent for shrinkage. Before completing his cross-examination, he indicated that shrinkage might run as high as 3 percent, although he disqualified himself as an expert on that question. The question of shrinkage was clearly one for the jury to determine under the evidence.

The defendant contends that a reasonable doubt as to his guilt arose as a matter of law because of evidence adduced concerning a leaky gasoline tank. The evidence shows that the shortage of 55,893 gallons of gasoline occured between January 1, 1954, and June 15, 1955. The defendant left the service of the company on July 8, 1955. The evidence is that sometime prior to December 6, 1955, a leaky gasoline tank was suspected. An engineer from the Omaha Testing Laboratory was employed to check the company's tanks. He commenced his tests on December 6, 1955, and completed them about April 7, 1956. The testing engineer's report showed that one of four underground gasoline tanks was leaking. For the 30 days following December 6, 1955, the tank leaked 1,800 gallons of gasoline. The defendant asserts that the leaky gasoline tank casts such a doubt upon the guilt of the defendant that defendant's motion for a directed verdict should have been sustained.

We point out that the leaky gasoline tank was not discovered until almost 2 years after the defendant commenced falsifying the company records to conceal short-

ages of gasoline. There is not one word of evidence that any leakage occurred during the period the embezzlement was alleged to have occurred. There is not even any evidence that the leaky gasoline tank was in use or that it had any gasoline in it during the time the defendant was charged with embezzling gasoline. The leaky tank was not discovered until 4 or 5 months after defendant left the service of the company. The treasurer of the company testified that no abnormal loss of gasoline occurred after the defendant left the service of the company until the leaky tank was suspected sometime before December 6, 1955.

The charge in the present case was for the embezzlement of gasoline. There was no charge that defendant embezzled kerosene, tractor fuel, or distillate. The audit revealed large shortages of these products. As an example, the audit shows that from May 24, 1955, to June 11, 1955, defendant overfooted the sales of tractor fuel an even 100 gallons on each of 10 different days. The audit further shows that from January 1, 1955, to June 15, 1955, there was a shortage of 7,199 gallons of kerosene, 2,757 gallons of tractor fuel, and 9,569 gallons of distillate. There was no evidence that any tanks containing these fuels had ever leaked. A leaky gasoline tank could in no manner account for the shortages in these fuels. The jury had the right to consider these facts in determining whether the loss of gasoline resulted from leakage.

It is the contention of the defendant that the losses by leakage occurring after December 6, 1955, should be related back to the period commencing January 1, 1954, and ending on June 15, 1955, and credited against the amount charged to have been embezzled as a matter of law and thus create a reasonable doubt, at least, of the guilt of the defendant. Such a credit would be nothing less than pure speculation and conjecture. No objection was raised to the evidence of leakage, in fact it was put in evidence by the State. Its admissibility

rests on the fact that it is a circumstance which the jury might consider in determining whether or not there was a reasonable doubt as to the guilt of the defendant. But it is only a circumstance which the jury could consider in arriving at a verdict. It presents no situation requiring the direction of a verdict and the trial court was clearly right in overruling such motion.

Defendant contends that the finding of the jury that he was guilty of embezzling 57,000 gallons of gasoline of the value of $11,400 is not sustained by the evidence and has the effect of vitiating the verdict. The maximum amount of gasoline shown by the evidence to have been embezzled is 55,893 gallons. We point out in this connection that the purpose in having the jury determine the value of the embezzled property is to enable the court to fix the penalty. The penalty provided by section 28-538, R. R. S. 1943, is as follows: "* * * every such person so offending shall be punished in the manner provided by law for feloniously stealing property of the value of the article so embezzled, * * *." Grand larceny is the stealing of property of the value of $100 or upwards. § 28-506, R. R. S. 1943. Petit larceny is the stealing of property of less value than $100. § 28-512, R. R. S. 1943. Consequently, in a prosecution for embezzlement the jury must fix the value in order to determine if the penalty for grand or petit larceny applies. The fact that the finding of the jury as to the amount and value of the property embezzled exceeds that which the evidence will sustain is not material where the variance does not operate to change the penalty. The amount which the evidence sustains has a value in excess of $100. It is not contended that its value was less than that amount. No prejudice resulted to the defendant. The fixing of the value of the property embezzled is not an element of the crime of embezzlement, it goes only to the penalty.

In Young v. State, 44 Ohio App. 1, 184 N. E. 24, a similar situation arose. The defendant was charged

with embezzling $46,948. The jury found that he embezzled $22,090. The court found that the evidence would sustain a finding that defendant embezzled $9,311.76 only. The court then stated: "In any event, the jury was justified in finding the amount embezzled to be more than $35, and, if it was more than that amount, the crime was a felony, and the amount of the embezzlement could have no effect on the punishment to be inflicted. If any error was committed by the jury in fixing the amount embezzled, it could not prejudice the rights of the defendant, nor in any way affect the punishment."

Defendant contends the sentence of the court is excessive. The sentence was from 2 to 3 years in the State Reformatory for Men. The statutory penalty is from 1 to 7 years in the Nebraska State Penitentiary. We find no reason to interfere with the discretion exercised by the trial court in imposing the penalty that it did.

A consideration of the entire record and the assignments of error here made disclose that no prejudicial error occurred, that defendant had a fair trial, and the judgment should be affirmed.

AFFIRMED.

SIMMONS, C. J., dissenting.

I disagree with certain statements of the evidence made by the court. That disagreement goes to lack of detail and definiteness in most instances and will not be developed here.

I limit this dissent to two matters. The first is the complete lack of any evidence that the defendant converted or appropriated any gasoline or other property of the elevator company. There is a failure of proof of an essential element of the crime charged. The second is the construction which the court puts upon the 1915 amendment to what is now section 28-538, R. R. S. 1943.

The defendant in this case was the manager of the company's gas station at Wilber. There were at all

times four or five other employees of the company who sold and delivered gasoline and other commodities including bulk deliveries to farm customers. They had access to the commodities sold and made deliveries when the defendant was not present. The defendant's possession of the gasoline of the company and the transaction of its business was not an exclusive possession.

There was a shortage of gasoline. However, every witness for the State, including the auditors, testified that there was no evidence that the company had been deprived of any gasoline or other commodity including a "nickel" by the defendant. There was no evidence of an "appropriation" or "conversion" of the company's gasoline or other property by the defendant. The company's president testified that he did not know of any gasoline that defendant had taken wrongfully and a co-employee testified that he had no idea where the missing gasoline went. The State's case as to this element of the offense rests solely and exclusively upon the shortage of gasoline. The court points out no evidence to the contrary.

The court holds: "Embezzlement is the fraudulent *appropriation or conversion* of another's money or property by a person to whom it has been entrusted or into whose hands it has lawfully come by virtue of his employment *with the felonious intent* to defraud or deprive the owner thereof." (Emphasis supplied.)

Here the court recognizes two elements of the offense—appropriation or conversion with felonious intent.

In Chaplin v. Lee, 18 Neb. 440, 25 N. W. 609, we held: "To constitute embezzlement it is essential that the owner should be deprived of the property alleged to be embezzled by an adverse use or holding."

In McAleer v. State, 46 Neb. 116, 64 N. W. 358, following Chaplin v. Lee, *supra,* we held: "To constitute embezzlement the owner must be deprived of his property by an actual adverse use or holding."

In Nelson v. State, 86 Neb. 856, 126 N. W. 518, following the above decisions, we held: "* * * failure to pay over or account for money received by defendant as agent would not amount to embezzlement, if his principal was not in fact deprived of the property by a felonious, adverse use or holding. Under the information, actual conversion with felonious intent was essential to a conviction."

Changing the word "money" to "gasoline" makes the holding directly applicable here.

Following Chaplin v. Lee, *supra,* we held in State v. Hill, 47 Neb. 456, 66 N. W. 541: "It is essential to the crime of embezzlement that the owner be deprived of the property alleged to have been embezzled, by an adverse use or holding."

In Colley v. Chicago & N. W. Ry. Co., 107 Neb. 864, 187 N. W. 98, a civil action for conversion, we held: "The act alleged to be a conversion must be positive and tortious." This decision was followed in Talich v. Marvel, 115 Neb. 255, 212 N. W. 540. Heretofore we have not deviated from these decisions in prosecutions under section 28-538, R. R. S. 1943.

The court points out no evidence of appropriation or conversion, fraudulent or otherwise. There was none.

The court then holds: "Conversion of the property alleged to have been embezzled to the personal use of the person charged is not an essential element of the crime of embezzlement."

Implicit in this statement is the recognition that conversion is an element of the offense. The distinction seems to be in "the personal use of the person charged." The distinction is a play on words.

Following several of the above decisions in Luther College v. Benson, 126 Neb. 410, 253 N. W. 421, we held: " 'Embezzle' and 'convert to his own use' are synonymous terms. 'Conversion to his own use' would be accomplished by any unauthorized act of dominion or

ownership exercised by one person over property of another." The court ignores this definition.

Our decisions are in accord with the rules as stated in the authoritative texts. In 18 Am. Jur., Embezzlement, § 21, p. 581, it is stated: "To constitute the crime of embezzlement there must be a fraudulent conversion or misappropriation of property with felonious intent." In 29 C. J. S., Embezzlement, § 11, p. 682, it is stated: "To constitute a conversion so as to make out a case of embezzlement, the owner must be deprived of his property or money by an adverse using or holding; * * *."

In Underhill's Criminal Evidence (5th Ed.), Embezzlement, § 576, p. 1418, it is stated: "The gravamen of the crime is the fraudulent intent, coupled with execution."

In Buckley v. State, 131 Neb. 752, 269 N. W. 892, we held: "The word 'embezzle' includes within its import the fraudulent appropriation of the funds of another to one's own use."

How then does the court avoid the complete lack of evidence and the affirmative negation of any evidence of conversion or appropriation?

The court goes first to the 1915 amendment to what is now section 28-538, R. R. S. 1943, that being the statute upon which the charge here rests. Throughout, the statute uses the synonymous terms embezzle or convert to his own use.

The 1915 amendment as it now appears provides in part: "The failure, neglect or refusal of such officer, attorney at law, agent, clerk, servant, factor or commission agent, as hereinbefore in this section enumerated to pay, deliver or refund to the proper person, company or copartnership such money, goods or property, entrusted to his or her care or which shall come into his or her possession, upon demand, shall be *prima facie proof of intent to embezzle.*" § 28-538, R. R. S. 1943.

The italics are mine. The quoted provision goes only to the second element of the offense, to wit, "proof of intent to embezzle."

The element of conversion remains and requires proof. We held in Nelson v. State, *supra,* that "actual conversion with a felonious intent" was essential to a conviction. The court here recognizes this requirement for it says: "Under this statute, *when other elements* of the crime of embezzlement *have been established,* it is not necessary to offer other evidence of intent to embezzle where a *proper demand has been made."* (Emphasis supplied.) I shall return to the "proper demand" presently.

Where is the proof of the "other elements of the crime"? The court recites none and there is none.

To avoid that situation the court goes (without citation) to what is now section 28-543, R. R. S. 1943, an act relating to the embezzlement of public money. That act provides in part: "The refusal of any such officer or person, whether in or out of office, to pay any draft, order or warrant which may be drawn upon him by the proper officer, for any public money in his hands, no matter in what capacity the same may have been received or may be held by him, or any refusal by any person or public officer to pay over to his successor any public moneys or securities promptly, on the legal requirement of any authorized officer of the state or county, shall be taken, on the trial of any indictment against such officer or person for embezzlement, as *prima facie evidence of such embezzlement."* (Emphasis supplied.)

The difference in the two statutes is patent. In the instance of the statute under which the defendant was charged the Legislature made failure to comply with a proper demand prima facie proof of intent to embezzle. In section 28-543, R. R. S. 1943, the Legislature made a refusal to comply with a proper demand prima facie evidence of embezzlement.

Because in Bolln v. State, 51 Neb. 581, 71 N. W. 444, and Whitney v. State, 53 Neb. 287, 73 N. W. 696, we held the evidence sufficient under section 28-543, R. R.

S. 1943, the court concludes that a prima facie case of *intent to embezzle* is sufficient to take this case to the jury in a prosecution under section 28-538, R. R. S. 1943. The court ignores the fact that the "other elements of the crime" have not been established.

There remains the void of evidence of appropriation or conversion by the defendant.

State v. Boatman, 142 Neb. 589, 7 N. W. 2d 159, 144 A. L. R. 585, was a prosecution under what is now section 28-543, R. R. S. 1943. In that case the court referred to the rule of strict construction applicable to all criminal statutes and held that any change in the act was a matter for legislative action and not judicial interpretation.

So here, if the refusal to comply with a proper demand under section 28-538, R. R. S. 1943, is to be made prima facie evidence of embezzlement and not "intent to embezzle," that is a matter for legislative action and not judicial construction. The Legislature has said in section 28-538, R. R. S. 1943, only that it is prima facie proof of intent to embezzle. It involves only one element of the offense of embezzlement under the statute involved here.

I now go to the demand which the court says was a "proper demand" under the statute and in and of itself made a prima facie case of embezzlement to take the case to the jury.

It was a demand to "refund * * * Approximately 57,000 gallons of gasoline * * * which is at this time missing and not properly accounted for."

It was a demand for the "refund" of at least 1,100 gallons (and under one version of the State's evidence, 11,100 gallons) more gasoline than the State claimed at any time was missing and not accounted for.

Was it a "proper demand"? Obviously the company knew it was demanding a refund of more gasoline than was unaccounted for. Obviously every one knew that the defendant could not refund that gasoline.

If the defendant had agreed to the refund, under the court's construction of the act, he would have been confessing guilt of embezzlement of more than the claimed shortage. If defendant had pointed out the over demand, then under the court's theory he would have been admitting guilt of embezzlement of some amount. By denying the "refund" he, without more, under the court's holding established evidence to go to the jury sufficient to sustain a verdict of guilty. The defendant did not have the chance of a person playing Russian roulette. Here every chamber of the gun was loaded against him.

Were the evidence of intent to embezzle as to these matters fully stated, I think it insufficient to sustain a conviction under the circumstantial evidence rule stated in Larson v. State, 161 Neb. 339, 73 N. W. 2d 388.

But I pass that. Conceding it sufficient to prove intent to embezzle, it does not prove the required element of conversion or appropriation.

In Nelson v. State, *supra,* an embezzlement case, we held: "* * * an unexecuted purpose to embezzle is not embezzlement * * * actual conversion with a felonious intent was essential to a conviction."

In Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539, we said: "A conviction should not be based on the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained."

All that is necessary under this decision to take a case of embezzlement to the jury under section 28-538, R. R. S. 1943, is for the State to submit evidence of a shortage of money or commodities and a "proper demand" to pay, refund, or deliver. Under this decision a manager of a store could be found guilty of embezzlement for shortages in cash from a money till used by other employees; for shrinkage in stored potatoes, if the full measure put in a bin were not accounted for; or flour leaking out

through a rat hole where he could not prove when the leak began or the amount of leakage.

The State could prove a proper demand and without more a case for the jury is made, and without more a conviction must be sustained. I do not agree.

I would reverse the judgment of the trial court and remand the cause with directions to dismiss.